**In re CAMELOT, INC., Debtor.**

**Bankruptcy No. 3–82–00243.**

United States Bankruptcy Court,
E. D. Tennessee.

May 4, 1982.

L. Caesar Stair, III, Knoxville, Tenn., for debtor.

John A. Walker, Jr., Knoxville, Tenn., for petitioning creditors.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This matter is before the court on an involuntary petition for relief under Chapter 11 of Title 11 of the United States Code filed by a husband and wife.

### FINDINGS OF FACT

#### A. The Pleadings

1. On February 23, 1982, petitioners, Ruben C. Hayden and Helen D. Hayden (hereinafter referred to collectively as "the Haydens" unless otherwise so specified), filed an Involuntary Petition against the debtor,

Camelot, Inc., alleging that they were creditors of the debtor holding claims, not contingent as to liability, amounting in the aggregate, in excess of the value of any lien held by them on the debtor's property securing such claim, to $5,000 or over. The Haydens alleged that the nature and amount of their claim was for an amount in excess of $5,000 for expenses that they had paid on behalf of the debtor but which had not been reimbursed by debtor and for room and board furnished by the Haydens to employees of the debtor in the amount of $1,800.

The Haydens also alleged that the debtor was generally not paying its debts as they became due and that within 120 days before the date of the filing of their petition, a custodian, within the meaning of 11 U.S.C. § 101(10), was appointed in that the Circuit Court for Hawkins County, Tennessee, took jurisdiction over the assets of the debtor and ordered same to be sold by Order entered on or about January 29, 1982, in a civil action styled *Ruben Cone Hayden, et ux. v. Michele Valletta, et al.*, Civil Action No. 3304–J.

The Haydens prayed that an order of relief be entered against Camelot, Inc., under Chapter 11 of Title 11, United States Code.

2. On March 11, 1982, Camelot, Inc., filed a Motion moving the Court to dismiss the Involuntary Chapter 11 Petition filed by the Haydens and to require the Haydens to file a bond to indemnify Camelot for such amounts as the Court might later allow under 11 U.S.C. 303(i).

In addition to generally denying the averments contained in the Hayden's Involuntary Petition, the debtor alleged in its Motion that it had more than twelve creditors whose claims were not contingent as of the date of the filing of the Involuntary Petition on February 23, 1982, and attached a list of those creditors to its Motion as Exhibit B.

3. Pursuant to a notice issued by the Court to all parties in interest, a hearing on the debtor's Motion to Dismiss was held on March 31, 1982. On the date of the hearing, the Haydens filed three Motions to Intervene by the following parties in the following amounts:

| (1) Parker Brothers Company, Inc., d/b/a Tennessee Turf and Equipment— | $744.07 |
|---|---|
| (2) Dale Advertising— | $109.39 |
| (3) Mounts Mechanical— | $ 42.00 |

Based on the filing of the Motions to Intervene by three additional alleged creditors of the debtor and the controverted issues of fact raised in the Hayden's Petition and the debtor's Motion, the Court directed that an Answer be filed by the debtor and that the case be set for trial on April 13, 1982.

4. Thereafter, on April 12, 1982, the debtor filed an Answer to the Involuntary Petition generally denying the averments contained in the Involuntary Petition and also filed a Counterclaim for its damages, both compensatory and punitive, costs and attorney fees resulting from the filing of the Involuntary Petition.

5. This case was then tried on April 13, 1982, and was continued and concluded on April 14, 1982.

### B. Hayden—Valletta Agreement

6. On February 12, 1981, the Haydens and Michele Valletta, John Valletta, and Bernardo Valletta (hereinafter referred to collectively as "the Vallettas"), entered into an Agreement (Exhibit 44). Pursuant to the Agreement, the Haydens and Vallettas agreed to form a subchapter S corporation, Camelot, Inc., the debtor, in which the Haydens would own 25% of the stock and the Vallettas would own 75%. In addition, the Haydens were to transfer all of the lands, equipment, furniture, furnishings and related facilities known as the Camelot properties to the corporation. In return, the Vallettas agreed to pay and assume the indebtedness owed C. C. Pack and wife, Linda Lu Pack, and Associates Financial Services, as well as the indebtedness owed on any equipment owned by the Haydens. Further, the Vallettas were obligated to provide and advance the necessary funds to operate and maintain the golf course and the corpora-

tion, which amounts were to be evidenced by a promissory note to be signed by the corporation payable on demand to the Vallettas. The Haydens were to devote their full time and attention to managing and operating the golf course and the corporation, but they were to receive no compensation for such managing and operating other than that the corporation agreed to supply the Haydens with living quarters at no cost to the Haydens. It was recognized and agreed in the Agreement that the Haydens' compensation would be derived from their share of the profits made by the corporation. The Agreement further stated that if the Vallettas decided that the premises, equipment, and mineral rights should be sold then the Haydens would consent to any such sale and cooperate and do nothing to interfere with such a sale. Lastly, the Agreement specified that the Vallettas had the power to change the officers and directors of the corporation if they should determine that such change was necessary.

### C. Method of Operation

7. From and after February 12, 1981, the corporation, Camelot, Inc., commenced business operating a golf course and clubhouse in Rogersville, Hawkins County, Tennessee. At the time of the commencement of operations, the Vallettas and/or their accountant set up the books and record-keeping system for the corporation which was explained in detail to Mrs. Hayden. Thereafter, from February 12, 1981, until September 9, 1981, Mrs. Hayden maintained and kept in her possession the cash disbursements journal (Exhibit 29) of the corporation, as well as the cash receipts journal (Exhibit 40). During this time from February 12, 1981, to September 9, 1981, the Haydens operated the business of the debtor, took in all receipts of the debtor, and wrote all checks and incurred all obligations on behalf of the debtor. As Mrs. Hayden wrote checks on the corporate account, a cash disbursements journal was created. In addition, during this time the Haydens had a petty cash fund through the cash register of $200.00.

8. At the time of the execution of the Agreement dated February 12, 1981 (Exhibit 44), Mrs. Hayden furnished the Vallettas a list of the accounts payable that the corporation was assuming which was dated February 1, 1981 (Exhibit 28). At the time of the commencement of the corporation's business, John Valletta directed Mrs. Hayden to pay these accounts payable generally in three equal installments in March, April and May, 1981.

9. During the time from February 12, 1981, to September 9, 1981, when Mrs. Hayden maintained the cash disbursements journal, John Valletta and/or the Vallettas' accountants, Racklin & Cohen, would review the cash disbursements journal and instruct Mrs. Hayden to pay the corporate debts within the terms of the particular invoice. In this regard, John Valletta set up a payment schedule for Mrs. Hayden to follow (Exhibit 36).

10. After September 9, 1981, the cash disbursements journal was maintained by the Vallettas and kept in their possession at their residence in Pompano Beach, Florida. After September 9, 1981, Mrs. Hayden was directed to submit all of the corporation's invoices to the Vallettas for payment who would then write checks in payment of the corporate obligations.

11. In addition, beginning September 9, 1981, Mrs. Hayden was given an additional $1,000 petty cash fund with which to pay debts of the corporation amounting to $100.00 or less. Mrs. Hayden was then directed to submit her petty cash invoices to the Vallettas for reimbursement by the corporation. Pursuant to this procedure, the Haydens did submit petty cash invoices to the Vallettas and were reimbursed by the corporation for petty cash invoices submitted in the months of September, October, and November, 1981.

12. The day following Labor Day, 1981, Mrs. Hayden turned over the cash disbursements journal to the Vallettas, and advised the Vallettas that all of the debts up to that time of the corporation had been paid by her, or else invoices were submitted at that time to the Vallettas, and she also represented that there were no unreimbursed petty cash disbursements which had not

been paid by the corporation other than those that she submitted to the Vallettas at that time.

13. In December, 1981, a dispute arose between the Haydens and the Vallettas resulting in the Haydens filing suit against the Vallettas in the Hawkins County Circuit Court and the Vallettas sending notice to the Haydens that they were terminated as the managers of the corporation.

#### D. Hawkins County Circuit Court Pleadings

14. On December 15, 1981, the Haydens filed a Complaint (Exhibit 20) against the Vallettas in the Circuit Court for Hawkins County, Tennessee, and pursuant to their Complaint a restraining order was issued on December 15, 1981, against the Vallettas (Exhibit 26).

15. Thereafter, as a result of a hearing held on December 21, 1981, an agreed modified restraining order was entered in the Circuit Court for Hawkins County which restrained the Haydens from incurring any "additional expenses or obligations to the golf course or to the [defendant corporation] without the prior joint approval of the parties hereto." The agreed modified restraining order also required the Haydens to "make available and turn over unto the [defendants] records of all outstanding indebtednesses or liabilities of said golf course or corporation together with copies of any and all books, financial accountings and records of the corporation." (Exhibit 27).

16. The Vallettas filed an Answer to the Haydens' Complaint and filed a Counterclaim against the Haydens (Exhibit 21).

17. Subsequently, another hearing was held before the Honorable John K. Wilson, Circuit Judge for Hawkins County, Tennessee, on the 28th day of January, 1982, from which an Order was subsequently entered apparently on or about the 1st of February, 1981 (Exhibit 22). In this Order the Court ordered that Camelot, Inc., is dissolved pursuant to corporate resolution and that said dissolution shall be overseen by that Court under the laws of the State of Tennessee. Further, that upon liquidation of the corporate assets and the payment of all debts and liabilities of the corporation, the same to be determined by that Court, the net proceeds from the liquidation of said assets shall be distributed to the parties hereto according to their ownership interests. The Court further provided that the parties should present to the Court on February 15, 1982, a comprehensive report of real estate experts as to the most suitable means to liquidate the assets of the corporation; that the business of the corporation shall not be operated from and after this date; that the Haydens are ordered to turn over all books and records of any nature whatsoever concerning the operation of the corporation to the Vallettas; that the Vallettas were ordered to pay all utility bills that presently exist as a liability of the corporation; that the Haydens were ordered to divulge all obligations that had been incurred during the time of their management of the corporate business, and the Haydens were restrained from incurring any additional obligations from and after the date of the Court's Order; and that all parties are restrained from disposing or depleting any corporate assets or incurring any liabilities except with leave of the Court.

#### E. The Hayden's Claim

18. Mrs. Hayden testified that she submitted unreimbursed petty cash invoices to the Vallettas for December, 1981, in the total amount of $5,643.71. These petty cash invoices paid by the Haydens had not been reimbursed to her by the debtor. Mrs. Hayden admitted however that the debtor was entitled to a credit for the $1,200 in her petty cash fund and cash register as well as $2,633 that she had received but had not deposited to the corporate account. Mrs. Hayden thus testified that the balance due the Haydens was $1,810.71 for unreimbursed petty cash disbursements in December, 1981 (Exhibit 33). The petty cash reimbursement receipt in the amount of $562.96 dated December 30, 1981, which is a part of Exhibit 33, has written on it in Mrs. Hayden's handwriting "delivered to Clyde Willis, attorney, January 4, 1982." It also has the notation in Mrs. Hayden's handwriting—"12/30/81—These are the balance of

the petty cash receipts after court orders— Helen Hayden." Mr. John Valletta testified that he received these unreimbursed petty cash receipts, as well as certain other unpaid invoices, on or about January 8, 1982. The debtor stipulated that the Haydens were owed $1,810.71 for unreimbursed petty cash disbursements.

19. Mrs. Hayden also submitted a claim against the corporation for certain miscellaneous bills (Exhibit 35) which she initially testified were in the total amount of $961.60 on April 13, 1982, and then on the following day, April 14, 1982, testified that the total amount was $2,147.72. Mrs. Hayden testified that these were invoices which either she or her husband had paid in cash and which had not been reimbursed by the corporation. Mrs. Hayden also testified, however, that these miscellaneous bills had never been submitted to the Vallettas or the debtor prior to March 31, 1982, when the Haydens' attorney apparently turned over the miscellaneous bills (Exhibit 35) to the Vallettas' counsel for reviewing and copying pursuant to his request. In addition, the Haydens had never made any claim against the Vallettas or the corporation for the payment of any of these miscellaneous bills contained in Exhibit 35 despite their having been ordered by the Circuit Court of Hawkins County to turn over all debts and obligations of the corporation to the Vallettas at two different hearings on December 21, 1981, and on January 28, 1982 (Exhibits 27 and 22). In addition, Mrs. Hayden had represented at the time that she turned over the cash disbursement journal to the Vallettas in September, 1981, that all payments made by either she or her husband on behalf of the corporation had either been reimbursed to them or else they were then being submitted to the Vallettas at the time the journal was turned over. Similarly, Mrs. Hayden noted on one of the receipts constituting part of Exhibit 33 that the petty cash receipts or invoices submitted at that time were "the balance of the petty cash receipts after court orders" (Exhibit 33). Furthermore, several of the bills contained in Exhibit 35 were incurred prior to September 9, 1981, and one or two may have been incurred prior to February 12, 1981. Some were incurred after the Hawkins County Circuit Court had ordered the Haydens to incur no additional expenses or obligations on behalf of the corporation (Exhibit 27).

20. The Haydens also made claim against the corporation for room and board furnished C. A. Glassman and T. J. Hayden in the amount of $1,670. Mr. and Mrs. Hayden both testified that they furnished room and board to these two employees for which they had not been reimbursed by the corporation. C. A. Glassman is the grandson of the Haydens and T. J. Hayden is the daughter of Mr. Hayden. The claim for C. A. Glassman was for a period of eleven months and the claim for T. J. Hayden was for a period of six months, both at the rate of $25.00 per week. On cross-examination, Mr. Hayden admitted that these two employees of the corporation had been paid a weekly wage by the corporation and that they lived in the clubhouse which was owned by the corporation and that therefore the Haydens had not been out-of-pocket or furnished any room to these two employees. The Haydens also admitted on cross-examination that there was no agreement between them and the corporation regarding the furnishing of food to the two employees which was to be reimbursed by the corporation. Mr. John Valletta also testified that the corporation had entered into no agreement with the Haydens regarding any reimbursement for furnishing room or board to C. A. Glassman and T. J. Hayden. Further, John Valletta testified that C. A. Glassman and T. J. Hayden were paid a wage by the corporation and the cash disbursement journal so refects those payments. Furthermore, there is no testimony from either party as to the number of hours worked each week by either C. A. Glassman or T. J. Hayden. It was also noted that no claim had ever been made prior to the Haydens filing of their Involuntary Petition for reimbursement for either room or board furnished to their daughter and grandson. No claim had been made against the corporation or the Vallettas, nor was there any document introduced supporting the Haydens' claim.

21. The Haydens also made claim against the debtor for $2,369.88 which the Haydens said they had paid to the *Kingsport Times News*. In support of their claim, the Haydens introduced Exhibit 34 showing a summary of the charges and payments that they had made to the *Kingsport Times News*, as well as a check paid to the *Kingsport Times News* dated October 1, 1981, in the amount of $500.00 (Exhibit 37). On cross-examination however, Mrs. Hayden admitted that she had never advised the Vallettas nor the debtor of the indebtedness owed the *Kingsport Times News* until after her Involuntary Petition against the debtor had been filed. Furthermore, Mrs. Hayden testified that she had paid the *Kingsport Times News* $1,381.24 toward the end of March, 1982, or well after she and her husband had filed the Involuntary Petition against the debtor on February 23, 1982. Moreover, Exhibit 37 indicates that the *Kingsport Times News* statements were additionally sent out in the name of Camelot Golf Club beginning in June, 1981, and then Mrs. Hayden testified that she had the account changed to the name of her husband, Ruben C. Hayden, after January 31, 1982, so that the final statement that is a part of Exhibit 37 is addressed to Ruben C. Hayden rather the debtor. Furthermore, the *Kingsport Times News* debt was not revealed to the Vallettas or the debtor by the Haydens following the Hawkins County Circuit Court Order issued on December 21, 1981, or the Hawkins County Circuit Court Order issued on January 28, 1982, both of which directed the Haydens to turn over to the Valletas and the debtor all debts and obligations owed by the debtor.

### F. Amounts Owed By Haydens to the Debtor

22. Mrs. Hayden testified that the Haydens owed the corporation $1,715.37 (Exhibit 38), which had not been paid by the Haydens to the corporation. It was accordingly stipulated that the Haydens owed the corporation $1,715.37.

23. In addition, Mrs. Hayden testified that $150.00 had been deposited directly to the Haydens' personal account by Amoco Oil Company as a payment on their oil and gas lease, which sum had not been refunded by the Haydens to the debtor. Accordingly, it was also stipulated by the Haydens that they owed the debtor $150.00.

24. As a result of the stipulations made by the Haydens, the Haydens owed the debtor at the time of the filing of their Petition the total sum of $1,865.37.

### G. Mounts Mechanical

25. At the commencement of the trial of this cause on April 13, 1982, Mounts Mechanical withdrew its Motion to Intervene by oral motion made in open court which the Court granted.

26. John Valletta testified that he had not become aware of the Mounts' invoice until it was handed to him by Mrs. Hayden at the hearing on January 28, 1982, in the Circuit Court for Hawkins County. He further testified that he had some question at the time he became aware of this statement as to whether it was in fact a legitimate debt of the debtor since the statement was addressed to "the Haydens" and since the service was supposed to have been rendered on December 15, 1981, a time when Mr. Valletta was on the premises at Camelot and did not observe anyone there from Mounts Mechanical (Exhibit 10). Nevertheless, Mr. Valletta testified that after conversation with the Mounts that he was satisfied that this was a legitimate debt of the corporation that the corporation owed and would pay.

### H. Dale Advertising

27. John Valletta testified that he had first been advised by Donna Justice, the representative for Dale Advertising, that the Haydens had paid the Dale Advertising statement in full. Subsequently, at the hearing on January 28, 1982, Mrs. Hayden had advised him that the corporation owed Dale Advertising $109.39. Mr. Valletta also testified that the Dale Advertising invoice was for matches which he could not locate on the premises of the corporation and therefore had some question as to whether it was a legitimate debt. Nevertheless, Mr. Valletta testified that after further investi-

gation and discussion with Donna Justice, he was satisfied that it was a legitimate debt owed by the corporation which would also be paid.

### I. Parker Brothers Company, Inc., d/b/a Tennessee Turf and Equipment

28. At the time that the Haydens and the Vallettas entered into their Agreement on February 12, 1981, Mrs. Hayden represented that the debt that the corporation was assuming to Tennessee Turf and Toro was $10,646 (Exhibit 28). Thereafter, the Vallettas directed Mrs. Hayden to pay the Tennessee Turf and Equipment debt that the corporation had assumed in three payments in March, April, and May, 1981. Accordingly, Mrs. Hayden wrote a corporate check to Tennessee Turf and Equipment Company on March 20, 1981, in the amount of $3,500, on April 20, 1981, in the amount of $3,523.21, and on May 5, 1981, in the amount of $3,523.21 (Exhibit 25). In addition, at the time that she sent in the third payment, Mrs. Hayden made the notation in the cash disbursements journal that the account was paid "in full" (Exhibit 29).

29. Subsequently, Tennessee Turf and Equipment wrote Mrs. Hayden by speed letter dated June 18, 1981 (Exhibit 23), indicating that there was a balance due of $744.07. Mrs. Hayden then wrote back that "We already had these totals but the auditors and attorneys will not pay these balances unless you clarify". She also noted that "What does this balance represent? Our total at time of new corporation was $10,546.42 which we paid" (Exhibit 23).

30. Marsha Davis, an employee of Parker Brothers Company, d/b/a Tennessee Turf and Equipment, testified that after the speed letter of June 18, 1981, no further attempts by Parker Brothers and no further action was taken by Parker Brothers to collect this debt.

31. John Valletta testified that Mrs. Hayden had never advised either the Vallettas or the corporation of any remaining balance being owed Parker Brothers and that he was unaware of Parker Brothers' claim until the Haydens filed the Parker Brothers' Motion to Intervene on March 31,

1982. Mrs. Hayden testified that she had advised the Vallettas of the claim by Parker Brothers in May or June of 1981 for the remaining balance of $744.07.

### J. Debtor's List of Creditors as of February 23, 1982

32. John Valletta testified that the List of Creditors attached as Exhibit B to the Motion of the debtor filed on March 11, 1982, were the creditors of the debtor as of February 23, 1982. Mr. Valletta testified that his determination of credit status was based on whether the check that had been given to the creditor had in fact cleared the bank as of February 23, 1982. He also testified that a stamp was placed upon the invoices marking them paid with the date and check number but that these dates related to the date the check was written, rather than when it was mailed or received by the respective creditor. Mr. Valletta testified that he did not know when any creditor received its check from the debtor, but that he had requested in some instances that his secretary hold the checks for several days after the date on which they were written so that funds could be deposited in the debtor's account to cover the checks.

33. The statement from Kel-San Products Company (Exhibit 4) is stamped "paid 2–16–82 No. 677."

34. Two invoices are stamped "paid 2–17–82." They are the invoices from Citizen's Supply Corporation (Exhibit 12) and Sullivan County News, Inc. (Exhibit 2).

35. The Al Equipment Rental invoice is stamped "paid 2–18–82" (Exhibit 8).

36. Four invoices are stamped "paid 2–19–82": Evans Office Supply Company (Exhibit 14), Natural Gas Utility District (Exhibit 6), Portion Control Products (Exhibit 1), and Citizen Tribune (Exhibit 9).

37. Mr. Valletta testified that the only creditors of Camelot, Inc., as of February 23, 1982, which had not been paid as of the date of the trial were Mounts Mechanical and Dale Advertising. Further, testimony indicated that the debts owed to C. C. Pack and Associates Financial Services and Ham-

ilton Bank of Morristown were current. It was further Mr. Valletta's testimony that the C. C. Pack and Associates Financial Services debt was secured by a first mortgage on the building and real estate of the corporation and that the debt to the Hamilton Bank of Morristown was secured by certain equipment. There was no proof as to the value of the security held by these two creditors.

38. Mr. John Valletta also testified that except for the creditors listed on the List of Creditors of the debtor as of February 23, 1982 which were recurring debts, all of the other debts did not become known to him and the corporation until Mrs. Hayden turned over the invoices to Attorney Clyde Willis. Mr. Valletta testified that he did not receive the invoices until on or about January 8, 1982.

39. The Portion Control Products' invoice (Exhibit 1) indicates that it was for services rendered on December 16, 1981. Mr. Valletta testified that Clyde Willis was reimbursed by the corporation for a payment he made to Institutional Jobbers for food and supplies furnished in November and December, 1981. The Citizen Supply invoice (Exhibit 12) indicates that it was for services rendered in December, 1981. The Dale Advertising statement was for matchboxes that were delivered on December 29, 1981. The debt to the Tennessee Department of Revenue was for sales taxes for the month of December, 1981. The *Sullivan County News'* invoice (Exhibit 2) indicates that it was an amount carried forward, but the invoice date is January 30, 1982. The *Rogersville Review* invoice (Exhibit 3) indicates that it was for services rendered in December, 1981. The George A. Patterson invoice (Exhibit 11) indicates that it was for services rendered from November 2, 1981, through December 23, 1981, and the date of the invoice is December 28, 1981. The Kel-San Products' invoice (Exhibit 4) is dated November 19, 1981. The South Central Bell debt was for the telephone bill through January 22, 1982. The Culligan Water Conditioner bill was for a monthly service for the months of January and February, 1982. The statement of John J. Valletta was for reimbursement for his payment of a utility

bill which he paid on January 29, 1982. The Natural Gas Utility bill (Exhibit 6) was for a meter reading on December 30, 1981. The Evans Office Supply statement was for materials furnished on November 2, 18, and 24, 1981, leaving a balance of $62.34 after a payment of $503.21 on November 30, 1981 (Exhibit 14). The Al Equipment Rental invoice (Exhibit 8) was for equipment rented on December 19, 1981. The *Citizen Tribune* invoice (Exhibit 9) was for a previous balance pursuant to a statement dated January 31, 1982. The monies owed to the Hawkins County Trustee were for 1981 property taxes. The debt owed to Mounts Mechanical was for air conditioning work done on December 15, 1981 (Exhibit 10).

40. In addition, certain other invoices were introduced into evidence. An invoice from Hasson Bryan Hardware Company indicates that it was stamped paid on February 17, 1982, and has an invoice date of January 28, 1982, for services rendered on December 2, 1981 (Exhibit 13). A statement from Pratt Alexander Thompson Company is stamped paid December 8, 1981, is dated November 4, 1981, and Mr. Valletta testified that he received this bill sometime in late November, 1981 (Exhibit 18). A statement from Culligan Water Conditioning (Exhibit 5) indicates that it was stamped paid on February 18, 1982, for the months of December and January and that the February statement was received on February 4, 1982. A statement from Cumberland Vehicles, Inc., for services rendered on December 17, 1981, indicates that it was received on February 25, 1982 (Exhibit 15, 16, and 17). A statement from the Natural Gas Utility District indicates it was stamped paid on February 13, 1982, for a meter reading on December 30, 1981 (Exhibit 7).

41. John Valletta also testified that when he learned of a Wilson Sporting Goods' invoice owed by the corporation on or about December 9, 1981, he immediately wired funds from the corporation to the collection agency handling the account for Wilson Sporting Goods. He testified that Mrs. Hayden had not advised the corporation or the Vallettas of this obligation owed by the corporation.

42. John Valletta testified that because the Vallettas were not being advised by the Haydens of the debts owed by the corporation, by letter dated December 29, 1981, they sent a form letter to all of the known entities with which Camelot had done business seeking to determine if any amount was owed by Camelot to these entities (Exhibit 30).

## CONCLUSIONS OF LAW

1. The debtor owed the Haydens $1,810.71 for unreimbursed petty cash disbursements made by the Haydens on behalf of the debtor. The debtor however has a setoff for the amount owed by the Haydens to the debtor in the total amount of $1,865.37, making a total debt owed by the Haydens to the debtor of $54.66.

2. The claim of the Haydens against the debtor for $2,147.72 for the miscellaneous bills contained in Exhibit 35 is disallowed and denied on the grounds that the Haydens are estopped from asserting any such obligation owed to themselves since they did not make any claim against the Vallettas or the corporation until March 31, 1982, and since they did not comply with the orders of the Circuit Court for Hawkins County (paragraph 4 of Exhibit 27 and paragraph 6 and paragraph 8 of Exhibit 22).

3. The claim of the Haydens against the debtor for $1,670 for room and board furnished to C. A. Glassman and T. J. Hayden is disallowed and denied on the grounds that there was no agreement of the debtor to pay room and board for T. J. Hayden or C. A. Glassman and no claim was ever asserted against the corporation by the Haydens until after the litigation in the Hawkins County Circuit Court and not until the filing of the Haydens' Involuntary Petition.

4. The Haydens' claim against the debtor for the sum of $2,369.88 for reimbursement of payments to the *Kingsport Times News* is disallowed and denied on the grounds that $1,381.24 of said payments were made after the Haydens filed their Involuntary Petition against the debtor on February 23, 1982, and for the reason that the Haydens concealed the debt to the *Kingsport Times News* from the debtor and is therefore estopped from making any claim against the corporation for the payment of said debt. The Haydens further failed to comply with the orders of the Circuit Court for Hawkins County as heretofore set forth and are also estopped from making claim against the debtor for that reason.

5. If any obligation were owed to Mr. and Mrs. Hayden by the debtor, that obligation would be owed to one entity, the Haydens, rather than to two entities, Ruben C. and Helen D. Hayden. This conclusion is limited to the particular facts in this case where there was no proof as to what monies were advanced individually by Mr. Hayden and/or Mrs. Hayden. Rather, all of the proof was that the payments made by Mr. and Mrs. Hayden on behalf of the corporation were lumped together from their joint account and thus it is the conclusion of the Court that they constitute one entity for the purposes of 11 U.S.C. § 303(b).

6. Since the Haydens owe the debtor $54.66, they are not a creditor of the debtor and do not hold a claim against the debtor, not contingent as to liability, amounting in the aggregate, in excess of the value of any lien held by them on the debtor's property securing such claim, to $5,000 or over. The Haydens are therefore not a proper entity to petition the Bankruptcy Court for the entry of an involuntary order of relief against the debtor under Chapter 11 of Title 11, United States Code.

7. As to the alleged debt of Parker Brothers Company, d/b/a Tennessee Turf and Equipment Company, the following Memorandum was entered April 16, 1982, and incorporated herein:

"At the conclusion of the trial on the involuntary bankruptcy petition filed February 23, 1982, by Ruben C. Hayden and Helen Hayden, 11 U.S.C. § 303(b)(2), this court indicated in preliminary oral findings from the bench that Parker Bros. Co., Inc., an intervening entity, 11 U.S.C. § 303(c),

was not the holder of a claim against the debtor that was not contingent as to liability and was therefore not an entity that could be a petitioning entity in an involuntary case against the debtor.

After a further review of Exhibit 23 and the testimony of Marsha Davis, the court concludes that, although the claim of Parker Bros. Co., Inc., is a disputed claim, it is not contingent as to liability. *In re McNeil,* 13 B.R. 434, 436 (D.C.E.D.Tenn.1981), aff'g. The creditor is therefore an entity which may be a petitioning entity against the debtor."

■ 8. Dale Advertising is a valid petitioning creditor under 11 U.S.C. § 303.

9. The debtor had less than twelve creditors on the date the Involuntary Petition was filed on February 23, 1982, since more than nine of the listed creditors on the debtor's List of Creditors as of February 23, 1982, were paid prior to that date, the date the Involuntary Petition was filed.

■ 10. The debtor, Camelot, Inc., was and is generally paying its debts as such debts become due. Since the Haydens concealed debts from the debtor and were officers and employees of the debtor and were under specific directions and court orders to divulge such debts to the corporation, the Haydens are estopped from claiming that the debtor was not generally paying its debts as they became due.

11. Since the petitioners have not met the requirements of 11 U.S.C. § 303(b), the issue of whether a custodian was appointed or took possession of the property of the debtor within 120 days before the date of the filing of the Petition is moot.

Accordingly, the material facts alleged in the Involuntary Petition by Ruben C. Hayden and Helen D. Hayden against the debtor, Camelot, Inc. have not been proved. The Involuntary Petition for relief under Chapter 11 will be dismissed.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.