In re CAMELOT, INC., Debtor.

Bankruptcy No. 3–82–00243.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 6, 1982.

Bernstein, Susano, Stair & Cohen, L. Caesar Stair, III, Knoxville, Tenn., for debtor.

John A. Walker, Jr., Knoxville, Tenn., for petitioning creditors Ruben C. Hayden and Helen D. Hayden.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

In this involuntary bankruptcy case, 11 U.S.C.A. § 303 (1979), after dismissal of the petition, Camelot, Inc., the debtor, seeks

judgment against the petitioning creditors,[1] Ruben C. Hayden and Helen D. Hayden, for costs, attorney fees, and damages. 11 U.S.C.A. § 303(i) (1979).[2]

## I

On February 23, 1982, the Haydens, husband and wife, filed an involuntary petition against Camelot, Inc. On May 4, 1982, after trial, the court dismissed the petition, finding that the Haydens were not creditors of the debtor but, in fact, were indebted to the debtor. The court further found that, contrary to the allegations in the petition, the debtor generally was paying its debts as those debts became due.

Specifically, Camelot now seeks judgment against the Haydens for the following amounts:

| | | |
|---|---|---:|
| 1. | Attorney Fees | |
| | L. Caesar Stair, III | $ 7,047.50 [3] |
| | Bill Phillips | 850.00 |
| 2. | Accountant's Fees | |
| | Rachlin & Cohen | 3,618.22 |
| 3. | Vallettas' Expenses and salaries | |
| | John J. Valletta (Expenses) | 1,764.19 [4] |
| | John J. Valletta (Salary— 20 days at $300.00) | 6,000.00 |
| | Mike Valletta (Expenses) | 464.00 |
| | Mike Valletta (Salary— 3 days at $400.00) | 1,200.00 |
| 4. | Operational Loss | 20,897.00 |
| 5. | Missing Tools | 2,544.21 |
| 6. | Missing Furniture | 2,522.90 |
| 7. | Punitive Damages | 50,000.00 |

A hearing on the debtor's application was held June 17, 1982. Briefs were requested and have now been filed.

The findings and conclusions of this court resulting in the dismissal of the involuntary petition are fully set forth in the court's Memorandum entered May 4, 1982, and will not be restated herein.[5] Those findings and conclusions, however, have been considered for the purpose of the present application and are attached as Schedule "A" hereto.

## II

In the event the court finds that a petitioner has filed an involuntary petition in bankruptcy against a debtor in "bad faith," § 303(i)(2) provides that the court may render a judgment against the petitioner for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

The House Report explains this section as follows:

> (g) of this section or section 1104 of this title; or
> (2) against any petitioner that filed the petition in bad faith, for—
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

---

**1.** The debtor initially requested judgment against the Haydens, Donna Justice, and Parker Brothers Company, Inc., d/b/a Tennessee Turf and Equipment. The latter two were creditors of the debtor who intervened to join the Haydens as petitioning creditors. After trial, the debtor withdrew its request for judgment against Donna Justice. Since the post-trial brief of the debtor does not mention Parker Brothers Company, Inc., it is presumed that the debtor seeks recovery from the Haydens only.

**2.** If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
  (1) against the petitioners and in favor of the debtor for—
    (A) costs;
    (B) a reasonable attorney's fee; or
    (C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection

**3.** The attorney's original application requested fees of $5,428.00. Subsequent to the filing of the application, additional services and expenses increased this amount to $7,048.50.

**4.** This sum does not include the travel expenses incurred by John J. Valletta in conjunction with the June 17, 1982, hearing on the debtor's application for recovery under 11 U.S.C.A. § 303(i) (1979).

**5.** The court's Memorandum has been published. *In re Camelot, Inc.,* 19 B.R. 910 (Bkrtcy.E.D.Tenn.1982). [Schedule "A" has been deleted for purposes of publication.]

[I]f a petitioning creditor filed the petition in bad faith, the court may award the debtor any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on. "Or" is not exclusive in this paragraph.[6]

H.Rep. No. 595, 95th Cong., 2d Sess. 324, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6280.

Bad faith is a term of art undefined in the Bankruptcy Code. Perhaps it may best be defined as the opposite of good faith. Collier states that—

If the petition is filed in bad faith, *i.e.,* such as to embarrass the debtor, who may be a competitor of the petitioning creditors, or where the petition is found to be ill-advised or motivated by spite or malice, the court, in addition to the damages that may be assessed under § 303(i)(1), may assess as well, damages to the debtor proximately caused by the bad faith filing, as well as punitive damages.

2 Collier on Bankruptcy ¶ 303.12 (15th ed. 1979).

The Haydens contend their motivation for filing the involuntary chapter 11 petition was to "effect a reorganization of a financially distressed company at a time when the principal officers and directors of the company were attempting to have it liquidated . . . ." Haydens' Brief at 5. However, it is the opinion of the court that the motivation for filing the involuntary petition was to spitefully forestall the dissolution of the debtor corporation and frustrate the desired objective of the Vallettas.[7]

■ The bad faith of the Haydens in filing the involuntary petition is well-established in the record before the court. In the first place, the Haydens were not even creditors of the debtor when the involuntary petition was filed. In the involuntary petition the Haydens alleged that the debtor was indebted to them in the amount of $1,800.00 for room and board furnished to employees of the debtor. Testimony at trial disclosed that the employees were T.J. Hayden, the daughter of Mr. Hayden, and C.A. Glassman, a grandson of the Haydens; that the Haydens were not furnishing a room to these two employees; and that there was no agreement between the Haydens and the corporation concerning reimbursement for meals furnished to employees of the corporation. Furthermore, the Haydens concealed obligations of the debtor, which could not have reasonably been known by the Vallettas, while simultaneously alleging that the debtor was not paying its debts as they become due.[8]

---

**6.** 11 U.S.C.A. § 102(5) (1979) also specifies that "or" is not exclusive. Thus, the court is not limited to a mutually exclusive choice among the alternatives prescribed.

**7.** Camelot, Inc. is a corporation formed by the Haydens and the Vallettas for the purpose of operating a golf course and clubhouse. The corporation was formed pursuant to an agreement of February 12, 1981. The Haydens, who own 25% of the stock of the corporation, agreed to manage and operate the golf course and clubhouse. A dispute arose between the Haydens and the Vallettas, who own 75% of the stock of the corporation, in December of 1981. The dispute prompted the Vallettas to notify the Haydens that they were terminated as managers of the corporate property.

Legal proceedings were commenced by the Haydens in the Circuit Court for Hawkins County, Tennessee. An order of that court entered on or about February 1, 1982, provided for the dissolution of the corporation, as requested by the Vallettas, pursuant to the laws of the State of Tennessee. The terms of this order—

(i) prohibited further operation of the business of Camelot, Inc.,

(ii) required the Haydens to divulge the obligations incurred during the period of their management of the corporation, and

(iii) restrained the Haydens from incurring any additional obligations in the name of the debtor.

There is no evidence of an appeal of the circuit court's order.

**8.** These obligations were concealed in violation of an order of the Hawkins County Circuit Court. The Haydens further violated the same order by incurring additional obligations on behalf of the corporation after the entry of the order prohibiting them from doing so.

## III

## COSTS, FEES, DAMAGES

### Attorney Fees

■ Bankruptcy Code § 303(i) permits, but does not require, the court to grant judgment to a debtor for costs, attorney fees and damages in the event an involuntary bankruptcy petition is dismissed, other than upon consent of all petitioners and the debtor. Bad faith on the part of a petitioning creditor is not a condition precedent to an award for costs and attorney fees in an involuntary bankruptcy case. *In re Howard, Neilsen & Rush, Inc.*, 2 B.R. 451 (Bkrtcy.M.D.Tenn.1979).[9] Under the facts set forth in *In re Camelot, Inc.*, 19 B.R. 910 (Bkrtcy.E.D.Tenn.1982), and evidence adduced at the hearing on the debtor's application, this court has not the slightest hesitancy in awarding to the debtor the fully documented[10] attorney fees and costs which it incurred in defending itself against the insupportable petition. Further, contrary to the contention of the Haydens, the amount of time expended by Camelot's attorneys in their successful representation of the debtor is not "clearly excessive." The involuntary petition was vigorously presented by the Haydens and their counsel and required an equally vigorous defense by the debtor—point by point and debt by debt—if it was to successfully counter the testimony of the Haydens. Under all the facts and circumstances involved in this case, the requested fee is reasonable.

### Accountant Fees

Rules Bankr.Proc. Rule 115(e), 11 U.S. C.A., recites that:

When a case commenced by the filing of a petition against any person pursuant to Rule 104(a) (Involuntary Petition) . . . is dismissed or withdrawn, the court on reasonable notice to the petitioner or petitioners may award to the prevailing party the same costs that are allowed to a prevailing party in a civil action and reasonable counsel fees . . . .

Accountant fees are not included in the itemization of costs that may be taxed against a party under 28 U.S.C.A. § 1920. *Taxation of costs* (Supp.1982).[11] However, the issue of whether the accountant fee is an allowable cost is obviated because the debtor has established that the Haydens filed the involuntary petition in bad faith.

■ The accountant's services and expenses would not have been required if the involuntary petition had not been filed.[12] Since these services and expenses were proximately caused by the filing of the involuntary petition, the debtor is entitled to recover reasonable compensation[13] for the accounting services together with ex-

9. This case arose under the former Bankruptcy Act. Attorney fees and costs were awarded pursuant to § 2a(18) of the former Act, 11 U.S.C.A. § 11(a)(18) (1966), and Rules Bankr. Proc. Rule 115(e), 11 U.S.C.A.

10. See Exhibit 2 from the hearing of June 17, 1982.

11. A request for an award for accountant and appraiser fees was denied in *Guerin v. Weil, Gotshal & Manges*, 205 F.2d 302 (2d Cir.1953), on the basis that no authority existed under the Bankruptcy Act, or otherwise, for the allowance of such expenses. Judge Hand cited 28 U.S.C. § 1920 in his opinion. Employment of professional persons is presently expressly authorized by the Bankruptcy Code. 11 U.S.C.A. § 327 (1979).

12. John J. Valletta testified that he felt that it was necessary to employ an accountant to review the records because the Vallettas were completely unaware of the basis for the Hay-

dens' allegations that Camelot was indebted to them. The Vallettas needed to determine the facts prior to opposing the involuntary petition. The cash disbursements journal was maintained by the Vallettas after September 9, 1981, but the Haydens still had control after that date of petty cash transactions and authority to pay debts of less than $100.00.

13. 11 U.S.C.A. § 330(a) (1979) is not expressly applicable since the accounting firm was not employed pursuant to either § 327 or § 1103 of the Bankruptcy Code. Nonetheless, an award against a petitioning creditor for an expense incurred by the debtor in opposing an involuntary petition is limited by a standard of reasonableness. The factors listed in § 330(a) of the Bankruptcy Code are as reliable in this case to determine the reasonableness of the accountant fee as they would be if the section was explicitly applicable.

penses necessarily incurred. The accountant fee of $3,618.22 includes a charge of $2,817.00 for 51.2 hours for the services of a CPA and $801.22 in out-of-pocket expenses.[14] Although nothing in the record suggests that either the nature or the value of the services was extraordinary, the requested fee is reasonable considering the time and the cost of comparable services of a CPA in a nonbankruptcy case.

### Vallettas' Expenses and Salaries

█ The lodging, meals, and travel expenses incurred by John J. Valletta and Mike Valletta in connection with this case were likewise proximately caused by the filing of the involuntary petition and should be included in the amount of the judgment awarded to the debtor. Those expenses are as follows:

| | |
|---|---|
| Round trip expenses from Pompano Beach to Knoxville on March 4, 1982, by John J. Valletta to confer with the debtor's attorney. Ex. 4. | $ 511.38 |
| Round trip expenses of John J. Valletta from Pompano Beach to Knoxville for March 31, 1982, hearing on motion to dismiss. Ex. 5. | 567.21 |
| Round trip expenses of John J. Valletta from Pompano Beach to Knoxville and lodging expenses of Lisa Layne, an accountant, in connection with the April 13, 1982, trial on involuntary petition. Ex. 6. | 685.10 |
| Round trip expenses of John J. Valetta from Pompano Beach to Knoxville for June 17, 1982, hearing on debtor's application for costs, fees, and damages recoverable under 11 U.S.C.A. § 303(i) (1979). Ex. 7 and p. 36 of Transcript of June 17, 1982, hearing. | 423.00 |
| Round trip expenses of Mike Valletta from Pompano Beach to Knoxville for April 13, 1982, trial on involuntary petition. Ex. 8. | 464.00 |
| | $2,650.69 |
| Less deductions for differences between first class and coach fares (Knoxville to Atlanta, March 4, 1982; Ft. Lauderdale to Atlanta, April 12, 1982). | 38.00 |
| Total Expenses Allowable | $2,612.69 |

It is the debtor's contention that the court also should award $7,200.00 to Camelot representing the salary of the Vallettas for the period of time they have expended in this case. However, the court disagrees with this contention. The salaries of the Vallettas are not paid by Camelot. Their salaries are paid by Breezy Hill Mobile Home Park and Sales of Pompano Beach, Florida. There is no suggestion in the record that the involvement of the Vallettas in this matter has resulted in a reduction of their salary. Furthermore, the court has not been persuaded by the debtor that the salary expenses would be recoverable even if Camelot had been the payor.

### Missing Furniture and Tools

█ The debtor requests the court to award judgment against the Haydens in an amount in excess of $5,000.00 for items of furniture and tools which have disappeared. If these items have been converted, the debtor does have a cause of action for their value. However, was the disappearance of these items "proximately caused" by the filing of the involuntary petition? The debtor offers the following citation on the matter of proximate cause:

> The proximate consequences of a given act or omission, as distinguished from a remote consequence, are those which follow naturally in the ordinary course of things, without the intervention of any outside or independent agency.

22 Am.Jur.2d *Damages* § 81 (1965).

The disappearance of the furniture and the tools is not the natural result of the filing of an involuntary bankruptcy petition. Instead, the disappearance of these items is the result of an intervening act and was not proximately caused by the filing of the involuntary petition.

### Operational Losses

The debtor submits that it is entitled to recover $20,897.00 from the Haydens for

---

**14.** These out-of-pocket expenses were incurred in conjunction with the attendance of the accountant at two separate hearings in connection with the involuntary bankruptcy proceeding. These expenses consist of the fare for two round trip flights from Miami to Knoxville ($750.00), lodging for one night ($43.47), and parking expenses ($7.75).

operational losses. During his direct testimony, John J. Valletta explained the method whereby the debtor determined its alleged operational loss:

Q The—the monthly expenses on that list—I'm looking at it—are some $8,000.00; are they not?

A Yes.

Q And to arrive at the $20,897.00 figure that we have on Exhibit 1—how did you arrive at that?

A I arrived at this as the delay that took place because the bankruptcy was filed on February 23rd and—and it—we were out of bankruptcy on May the 4th or May the 5th when I found out, so that's two and a half months that we could have done other things that this cost would not have been just laid out and wasted.

Q Now,—

A These are lost dollars.

Q —we have not got any amount down here for what you might call lost good will or lost business reputation. What has been the effect of the involuntary petition on Camelot?

A Well, the immediate effect that I can see—that I've seen there is that there is very little of—little activity or no people coming out any more. Most people think the company is in bankruptcy. They—the inquiries are is what has happened. It's going to take us an amount of advertising and time paying bills to re-establish Camelot, Inc.

Q We don't have any amount down here for lost profits or any lost business, do we?

A No. We don't.

Q Did the corporation operate at all during this period of February 23rd to May the 4th?

A No. It has not.

█ An order of the Hawkins County Circuit Court entered on or about February 1, 1982, previous to the filing of the involuntary petition by the Haydens, prohibited the corporation from doing business. That order pretermits any recovery by the debtor for any lost profits.

Average monthly expenses in the amount of $8,359.00 are based on the following specific costs of the debtor:

| | |
|---|---|
| Salaries (2 maintenance men) | $ 1,256.00 |
| Payroll Taxes (.0067) | 75.00 |
| Insurance ($7,585.00 — 12) | 632.00 |
| Interest C.C. Pack Loan 1982 ($8,182.10 ÷ 12) | 681.93 |
| Interest Hamilton Bank Loan 1982 ($1,625.77 ÷ 12) | 135.48 |
| Interest Hamilton Bank Loan 1982 ($2,891.40 ÷ 12) | 240.95 |
| Real Estate Taxes ($4,500.00 ÷ 12) | 375.00 |
| Telephone ($3,071.00 — 12) | 307.00 (sic) |
| Utilities ($7,600.00 ÷ 12) | 760.00 (sic) |
| | |
| Maintenance of Golf Course | |
| Fertilizer ($12,574.00 ÷ 12) | 1,048.00 |
| Fungicides ($4,127.00 ÷ 12) | 344.00 |
| Herbicides ($1,642.00 ÷ 12) | 136.00 |
| Top soil ($4,467.00 ÷ 12) | 372.00 |
| Golf Carts ($8,056.00 ÷ 12) | 671.00 |
| Equipment ($10,355.00 ÷ 12) | 863.00 |
| Clubhouse ($5,547.00 ÷ 12) | 462.00 |
| | |
| Minimum Average Monthly Cost | $ 8,359.00 |

There is no documentation in the record that the debtor actually incurred these expenses. However, John J. Valletta testified during cross examination that the expenses were indeed incurred—

Q Mr. Valletta, I'll repeat my question, sir. Is it your testimony that during this period between the filing of the Petition and May the 5th when the Petition was denied and the order so finding was entered that the—that Camelot did in fact incur $1,000.00 expenses for maintenance of the golf course; $344.00 expenses for fertilizer; $136.00 for herbicides, et cetera, all as set out in Exhibit 13?

A Yes. It did. We were not operating to make a profit. What we were doing was minimal maintenance. That is a minimal maintenance to protect the property and asset as it is. You've got to cut the grass. You've got the herbicides. You've got the fungicides. All of that is absolutely necessary. That you expend whether you are operating or not. We were

not in operation. Those are minimal operating expenses that would not have been incurred that are lost because of the filing of bankruptcy on February 23rd. The solution could have been resolved two and a half months—three months earlier.

It is difficult to understand why the monthly expenses of the debtor while not doing business would be equal to the average monthly expenses during a period of operation. Certainly the telephone and utility expenses would be less than during a period of operation. It is peculiar that "minimal operating expenses" would equal average operating expenses. It is the observation of the court that it would not have been burdensome for the debtor to document its payment of these expenses to corroborate Mr. Valletta's testimony.

In any event, the issue is whether these so-called operational losses were proximately caused by the filing of the involuntary petition. With the exception of the telephone expense, these expenses were all an incidence of ownership of the corporate property. The expenses would not have been incurred but for the debtor's ownership of the golf course and other property. Furthermore, the maintenance expenses were apparently necessary to preserve the value of the debtor's property. Based on the record before the court, it appears that the debtor would have incurred these identical expenses even if the involuntary petition had not been filed. There is no evidence of a prospective buyer of the corporate property who was frustrated by the filing of the involuntary petition. Indeed, the testimony of John J. Valletta suggests that the Vallettas expect to retain an ownership interest in the property.

The debtor failed to establish that the operational expenses were proximately caused by the filing of the involuntary petition. To conclude that the debtor would not have incurred these expenses requires a conclusion that the debtor would not have owned the property when the expenses arose. Even the debtor has not requested the court to reach such a conclusion.

The debtor argues that it has sustained damages as a result of a two and one-half month delay which can never be recovered regardless of what may ultimately happen to the corporation. The court agrees that the debtor has experienced some degree of delay as a proximate result of the filing of the involuntary petition. Although damages which are either remote or speculative may not be recovered, *Agr. Services Ass'n., Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1072 (6th Cir.1977), the debtor is entitled to receive nominal damages in the amount of $100.00 from the Haydens, who wrongfully filed the involuntary petition.

### Punitive Damages

As previously noted by the court, "or" as used in § 303(i)(2) is not to be interpreted disjunctively. Punitive damages may be awarded against a petitioner that filed an involuntary petition in bad faith in addition to those damages proximately caused by the filing. The Haydens argue that punitive damages are inappropriate. *In re SBA Factors of Miami, Inc.*, 13 B.R. 99 (Bkrtcy.S.D.Fla.1981), is cited for the proposition that the purpose of punitive damages is to deter repetition of a defendant's conduct. Counsel for the Haydens submits that it is unlikely that they will be filing an involuntary petition in any bankruptcy court in the future.

There is, however, a second purpose of punitive damages, namely, to punish the defendant for his wrongdoing. The court is convinced that the Haydens filed the involuntary petition against Camelot in bad faith. It is particularly disturbing to the court that the Haydens were not even creditors of the debtor when they filed the involuntary petition and that they alleged the debtor was not generally paying its debts while simultaneously concealing obligations of the debtor. Dissatisfied with the outcome of the legal proceedings which they had commenced in Hawkins County, they vindictively filed an involuntary petition which has caused a substantial amount of time, expense and inconvenience for the

debtor. Furthermore, the filing of the involuntary petition, despite the fact that it was dismissed, creates a blemish on any prospective financial statement(s) of the debtor and possibly its principals.

Punitive damages in the amount of $1,000.00 are awarded to the debtor.

### IV

In summary, the Haydens filed the involuntary petition in bad faith and are liable to the debtor under § 303(i) of the Bankruptcy Code for the following expenses:

Attorney Fees
| | |
|---|---|
| L. Caesar Stair, III | $ 7,047.50 |
| Bill Phillips | 850.00 |
| Accountant Fee | 3,618.22 |
| John J. Valletta's Expenses | 2,172.69 |
| Mike Valletta's Expenses | |
| Documented travel expense | 440.00 |
| Nominal Damages | 100.00 |
| Punitive Damages | 1,000.00 |

This Memorandum constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752.

Submit judgment.