In re TARASI & TIGHE a/k/a d/b/a Tarasi, Tighe, Tierney, Johnson a/k/a Tarasi, Tierney & Johnson P.C., Louis M. Tarasi, Jr., Tarasi, Tighe, Tierney & Johnson a/k/a d/b/a Employee Profit Sharing Plan, Trustees Tarasi & Tighe.

Bankruptcy Nos. 87–3487, 87–3488 and 88–218.

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 24, 1988.

Donald L. Phillips, Phillips and Galanter, Pittsburgh, Pa., for Corporation.

John T. Tierney, III, c/o Greenlee, Derrico, Posa & Harrington, Washington, Pa., pro se.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

At the conclusion of the trial held on February 18, 1988 with respect to the above-captioned involuntary petitions, this Court entered an oral Order dismissing all three involuntary petitions on the ground that petitioning creditor, John T. Tierney, III (hereinafter "Petitioner") failed to establish the requisite elements for adjudication set forth in the Bankruptcy Code at 11 U.S.C. § 303(b) and (h).

On the basis of the evidence and testimony offered at trial held on February 18, 1988, the Court finds the relevant facts to be as follows.[1]

By letter dated November 4, 1987, the law firm of Tarasi & Tighe a/k/a Tarasi, Tighe, Tierney & Johnson a/k/a Tarasi, Tierney & Johnson P.C. (hereinafter "Corporation") gave Petitioner notice in accordance with his employment contract (Trial Exhibit 5) that his employment as an attorney with the Corporation would be terminated, such termination to be effective in sixty (60) days (January 3, 1988). Trial Exhibit 4.[2]

On December 22, 1987, Petitioner filed an involuntary Chapter 7 petition against the Corporation at Bankruptcy No. 87–3487. On January 4, 1988, Petitioner filed an "Amendment to petition changing it to a Chapter 11". Bankruptcy No. 87–3487, Docket Entry No. 4. On January 7, 1988, Petitioner filed "Amendment to petition changing it to a Chapter 7". *Id.* at Docket Entry No. 5.[3]

On December 22, 1987, Petitioner also filed an involuntary Chapter 11 petition against Louis M. Tarasi, Jr., at Bankruptcy No. 87–3488. Mr. Tarasi is a member of the Corporation, a member of the Advisory Committee of the Tarasi, Tighe, Tierney & Johnson Employee Profit Sharing Plan and Trust (hereinafter "Plan"), and a Trustee of the Plan. On January 11, 1988, Petitioner filed an amended involuntary petition at No. 87–3488 which deleted the claim for payments from the Plan which had been included in the original petition filed with respect to Mr. Tarasi.

By letter addressed to "Louis M. Tarasi, Jr., Trustee & Advisory Committeeman" dated November 19, 1987, Petitioner requested immediate payment of his vested interest in the Plan. Trial Exhibit 6. By letter dated January 15, 1988, Louis M. Tarasi, Jr., and David E. Johnson, as the Advisory Committee of the Plan, informed

---

1. This Court has reserved decision on motions pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 303(i) filed by counsel for alleged Debtors pending submission of briefs, deposition transcripts and memoranda of law due thirty (30) days from February 18, 1988. The hearing on these motions was held February 18, 1988, at the conclusion of trial on the involuntary petitions. When a ruling is made on these motions additional facts not essential to the decision herein will be set forth.

2. All trial exhibits referred to herein are those offered by alleged debtor's counsel and admitted into evidence by the Court at trial.

3. On January 26, 1988 Petitioner filed a motion at this Bankruptcy No. and at Bankruptcy No. 87–3488 which requested conversion of No. 87–3487 to a Chapter 11. *See* Docket Entry 18 regarding 87–3487 and Docket Entry 10 regarding 87–3488. This motion has been dismissed as moot in light of dismissal of the involuntary petitions.

Petitioner that his request was premature inasmuch as termination of his employment would not be effective until January 3, 1988, and, therefore, under the terms of the Plan, he had neither the right nor the power to request, and the Advisory Committee had neither the right nor the power to consider the request for, payment at that time. Trial Exhibit 7. The letter further informed Petitioner that the Advisory Committee's agent, Gateway Pension Planners, Inc., was in the process "of completing a compilation of the accrued benefits for each Participant" and payment would be made in accordance with the Plan provisions on or before March 30, 1988. On January 26, 1988, Petitioner filed an involuntary Chapter 7 petition against the Plan at Bankruptcy No. 88–218.

In the Corporation's case Petitioner alleged the existence of a claim for salary and for amounts due him under the Plan. In Mr. Tarasi's case, Petitioner originally averred that Mr. Tarasi was liable on the identical claims on the ground that Mr. Tarasi had guaranteed payment of the Corporation and Plan debts. In the involuntary petition filed against the Plan, Petitioner claimed amounts due him as a creditor of the Plan.[4]

At a settlement and conciliation conference held on February 9, 1988, counsel for alleged Debtors tendered to Petitioner, and Petitioner accepted, an amount agreed by the parties to be the full salary that was or could be owed to Petitioner.

Also on February 9, 1988, this Court, after notice and hearing, entered a protective order pursuant to a motion filed by counsel for alleged Debtors restricting discovery to the establishment of the requisite elements of 11 U.S.C. § 303. On February 11, 1988, Petitioner conducted depositions and on February 12, 1988, filed with this Court a Petition to Withdraw the Reference and filed with the District Court a Petition for Removal with respect to all three involuntary petitions. On February 17, 1988, the District Court, per the Honorable Gustave Diamond, entered an Order at Civil Action No. 88–323 remanding all three cases to this Court.[5]

On February 18, 1988, this Court held a trial on all the involuntary petitions.[6]

4. In the Corporation's case and in Mr. Tarasi's case Petitioner made allegations, verbally and in adversary proceedings filed with this Court, of fraudulent conduct and civil RICO violations. Petitioner also alleged that Mr. Tarasi and others have engaged in various criminal conduct. The involuntary petitions are herein dismissed and these claims were not and will not be decided by this Court. All adversaries relating thereto which have been filed in this Court were dismissed after the trial on February 18, 1988. The Court notes that, in violation of the automatic stay, Petitioner filed various actions in the District Court for the Western District of Pennsylvania setting forth the same allegations.

5. Judge Diamond's Order provides:
   AND NOW, this 17th day of February, 1988, plaintiff, John T. Tierney, III, having filed a petition for removal of this case from the Bankruptcy Court to the United States District Court for the Western District of Pennsylvania pursuant to Title 28, U.S.C., Section 1334(b), and it appearing that the petition is in the nature of a motion for leave to appeal pursuant to Bankruptcy Rule 8003, IT IS ORDERED that the appeal be, and the same hereby is, remanded forthwith to the United States Bankruptcy Court for the Western District of Pennsylvania because there has been no order from which an appeal could lie.

6. Petitioner was notified of the trial date on several occasions: in court, by written order and by telephone calls. He appeared pursuant to notice but refused to present evidence or testimony or to examine the alleged Debtors' witnesses on the ground that this Court had no jurisdiction to conduct the trial because Petitioner had not had a hearing before the District Court on his petition for removal and had not seen Judge Diamond's Order. Petitioner declined to accept as fact this Court's assurance that Judge Diamond had remanded the matters to this Court, notwithstanding the reading into the record by this Court of Judge Diamond's Order. Petitioner's refusal to present evidence or testimony in support of his petitions is noted herein only for the purpose of clarification of the text referenced by this footnote. In view of Judge Diamond's Order of February 17, 1988, any jurisdictional issue which may exist must be raised on appeal if any is filed.

   In the course of explaining his refusal to participate, Petitioner stated that he would answer any questions this Court may have had; however, when this Court asked Petitioner to divulge his correct address and telephone number, Petitioner refused to do so. Accordingly, copies of all Orders and Opinions of this Court will be mailed to Petitioner at every address Petitioner has provided to the Court and to every address provided to the Court by counsel

## DISCUSSION

### I. Bankruptcy No. 87–3487, The Corporation

At trial no evidence or testimony was offered to establish that Petitioner had a claim against the Corporation, nor was any evidence or testimony offered to establish that the Corporation was generally not paying its debts as they became due.

Previous documents filed with this Court by Petitioner which are of record indicate that any debts owed by the Corporation were those that would be incurred by a law firm on a monthly basis in the ordinary course of its business.[7] With respect to Petitioner's salary claim, the Corporation alleged in pleadings that certain salaries were to be paid on a pro-rata basis in accordance with the availability of funds pursuant to the minutes of the organizational meeting of the Board of Directors of the Corporation held September 8, 1986. *See* Motion No. 88–1075. There was no evidence or testimony introduced at trial to refute this allegation and Petitioner's employment contract does not contradict it. Trial Exhibit 5.[8] Thus the Corporation's liability for Petitioner's salary claim was the subject of a bona fide dispute. In any event, any and all salary due, past due, or to become due to Petitioner was paid to him on February 9, 1988, and Petitioner stated for the record at that time his satisfaction with, and acceptance of, this payment. There is, therefore, no debt due by the Corporation with regard to Petitioner's salary claim.

The Court also finds that Petitioner's claim with respect to Plan funds was not a debt for which the Corporation was liable in any respect. *See* the discussion in Part III, *infra*. *See also* Trial Exhibit 2, Article XIII, § 13.03 ("The Employer does not guarantee the payment of any money which may be or becomes due to any person from the Trust Fund"). Accordingly, this involuntary petition is dismissed.

### II. Bankruptcy No. 87–3488, Louis M. Tarasi, Jr.

In Mr. Tarasi's case, Petitioner founded his claim on the theory that Mr. Tarasi had guaranteed payment of Petitioner's salary and Plan claims. In pleading and on the record at the hearing of February 9, Petitioner maintained that a verbal guarantee had been made by Mr. Tarasi at a meeting of the Corporation's Board of Directors, the agenda of which included termination of Petitioner's employment.

Assuming without deciding that a verbal guarantee of the type alleged would be binding, the Court notes that there was no evidence or testimony introduced to prove the existence of a guarantee despite the fact that at Motion No. 88–1075 the Corporation alleged the existence of a pro rata salary payment arrangement and therefore the existence of a bona fide dispute. Therefore, this Court finds that any salary claim which may have existed against Mr. Tarasi was the subject of a bona fide dispute.

---

for alleged Debtors, to the extent the latter differ from those on file with the Court. In addition this Court will attempt to notify Petitioner by telephone of the entry and docketing of all Orders and Opinions of this Court at every telephone number available from the above sources. The Court takes this action, which is not required to effectuate the time to file appeals, in an effort to alert Petitioner to the docketing of this Memorandum Opinion and Order due to the inconsistencies in the various addresses provided by Petitioner to the Court.

7. Appended to Motion No. 88–1075 as Exhibit B is a statement of Corporation liabilities as of December 22, 1987. As the basis for the involuntary petition filed against the Corporation, Petitioner referred to debts owed by the Corporation in June of 1987. Petitioner produced no

testimony or evidence to indicate that he had made any reasonable inquiry to determine whether the alleged debts of June 1987 had been paid prior to the filing in December of 1987 and/or whether other more current "debts" existed, nor did Petitioner produce testimony or evidence to show that debts generally were not being paid as they became due. However, the Court finds as a fact that Petitioner at all times had had available to him reasonable access to Corporation files and did not avail himself of the opportunities to examine them before filing the petition.

8. Petitioner's employment contract states in paragraph 4 that "[t]he rate of compensation may be changed by mutual agreement of the parties. . . ."

The provisions of 11 U.S.C. § 303(b) which require a creditor to establish a claim "that is not contingent or the subject of a bona fide dispute" have not been met and this involuntary petition cannot be sustained. Further, because Petitioner accepted payment of his salary from the Corporation, this issue is moot as to Mr. Tarasi in his individual capacity.

There was no evidence or testimony offered to establish that Mr. Tarasi generally was not paying his debts as they became due. Documents on file with the Court which have not been contradicted show that any amounts owed by Mr. Tarasi to creditors are current. *See* Motion No. 88–1075, Exhibit C.

Notwithstanding Petitioner's withdrawal of his claim against Mr. Tarasi for payment of amounts alleged to be due and owing under the Plan, this Court finds that Mr. Tarasi had no liability on the claim for payment of Plan funds for the reasons stated in Part III, *infra*. Furthermore, in view of the absence of proof of the existence of a guarantee by Mr. Tarasi, the Court finds that Mr. Tarasi had no liability even if the Plan failed to pay. *Cf.* Trial Exhibit 2, Article XIII, § 13.03 ("The Employer does not guarantee the payment of any money which may be or becomes due to any person from the Trust Fund").

For these reasons the involuntary petition against Mr. Tarasi is dismissed.

III. *Bankruptcy No. 88–218, The Plan*

With respect to the involuntary petition filed against the Plan, the testimony and documents filed of record establish the facts to be as follows:

Article VI, § 6.01 of the Plan provides in relevant part:

### 6.01 Time of payment of Accrued Benefit.

A. Unless the Participant elects a later date in writing and the Advisory Committee consents to such election, the Advisory Committee shall direct the Trustee to commence distribution of a Participant's Nonforfeitable Accrued Benefit not later than sixty (60) days after the close of the Plan Year in which the later of the following events occurs:

(a) The date the Participant attains Normal Retirement Age; or

(b) The date the Participant terminates Service (employment) with the Employer.

B. In no event shall the Advisory Committee direct the Trustee to commence distribution, nor shall the Participant elect to have distribution commence, later than the Required Beginning Date. For purposes of this Article VI, the Required Beginning Date is the April 1 immediately following the calendar year in which the Participant attains age seventy and one-half (70½), or if later, the April 1 immediately following the calendar year in which the Participant terminates service.

Trial Exhibit 2. Testimony and evidence established that the Plan year is a fiscal year ending June 30. *See* Trial Exhibit 2, Article I, § 1.13. Thus, under the terms of the Plan itself, whether or not Petitioner would have a claim to distribution from the Plan is not determinable until sixty (60) days after termination of the Plan year. However, pursuant to the agreement of the Plan administrators (*see* footnote 10), the Plan agreed to pay on or before March 30, 1988.

The Plan further provides that a married participant's Nonforfeitable Accrued Benefit shall be paid in the form of a qualified joint and survivor annuity unless the participant and his spouse consent in writing to waive this benefit. Trial Exhibit 2, Article VI, §§ 6.02–6.06. Unless and until Petitioner's wife consents to waive this benefit, the terms of the Plan prohibit the Trustees from distributing other than to a joint and survivor annuity.[9] On the basis of the

---

9. According to the testimony elicited at trial, waiver forms signed by Petitioner's wife have not been submitted to date to the Plan administrators. Because Petitioner's wife is a designated beneficiary, a waiver form must be executed if the Advisory Committee is to distribute other than to a joint and survivor annuity policy. Trial Exhibit 2, Article VI, §§ 6.04, 6.05. However, such forms will be provided when Gateway Pension Planners, Inc., the Plan's agent,

foregoing, the Court finds that Petitioner will not have an uncontested, uncontingent, unliquidated claim which is not subject to a bona fide dispute until at least sixty-one days following the termination of the Plan year, and then only if he has complied with the Plan provisions which will make operative the distribution sections of the Plan which would effect disbursement to Petitioner.[10] Furthermore, in the event that at the appropriate time Petitioner is denied payment, the Plan provides an appeal procedure which must be exhausted before other action is taken. Trial Exhibit 2, Article VIII, § 8.09.

This Court finds not only that Petitioner does not have a claim against the Plan which is cognizable under § 303 of the Bankruptcy Code, but also that the Plan has no debts and, therefore, Petitioner could not meet his burden of proof that the Plan generally is not paying its debts as they become due. *See* 11 U.S.C. § 303(h)(1). Testimony and evidence offered at trial established that the Plan holds over $229,000.00 and that there is sufficient money to pay all vested claims to funds which could be made against it by participants.[11]

■ Finally, under ERISA, this Court does not have jurisdiction over any action brought in an attempt to enforce the Plan. Pursuant to 29 U.S.C. § 1132(e)(1), exclusive jurisdiction lies with the district court or with state courts of competent jurisdiction.[12]

The Court notes that at the hearing on February 9, 1988, and with respect to the involuntary petition against the Plan, Petitioner was ordered to post a $10,000.00 bond, ten per cent cash, within three (3) days of that hearing. Petitioner had funds available to post this bond because he had accepted a salary check in excess of $23,-000.00 in Court on February 9, 1988. *See* discussion in Part I, *supra*. This Court's verbal and written Orders provided that failure to post bond would result in dismissal of the involuntary petition. The bond Order was entered at the hearing on February 9 after this Court had expressed its concern as to whether it had jurisdiction over any claim against the Plan in light of ERISA and after Petitioner indicated that he would consider withdrawing or moving to dismiss the involuntary petition against the Plan. The bond was never posted nor was any action taken by Petitioner to dismiss or withdraw this petition. The involuntary petition against the Plan therefore is dismissed on this basis as well as those discussed above.

Based on the foregoing, the involuntary petition against the Plan is dismissed.

## CONCLUSION

### IV.

In accordance with the foregoing the Court finds that all three cases must be dismissed because no claims cognizable under 11 U.S.C. § 303 have been shown to exist and because no evidence, testimony or documents of record establish that alleged Debtors generally failed to pay all debts as they became due. An appropriate Order will be entered.

---

completes its computation of the vested amounts, which computation shall occur on or before March 30, 1988.

**10.** At trial David Johnson, a member of the Advisory Committee and a Trustee of the Plan, testified that arrangements have been made to pay any allowable claim in accordance with the provisions of the Plan on or before March 30, 1988.

**11.** The contributions to the Plan were made in two installments: one in fiscal year 1984 and one in fiscal year 1985. The contributions total $184,416.19. The difference between the $229,-000 currently available and the total contributions is due to accrued interest.

**12.** 29 U.S.C. § 1132(e)(1) provides:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.