**In re TARASI & TIGHE a/k/a d/b/a Tarasi, Tighe, Tierney, Johnson a/k/a Tarasi, Tierney & Johnson P.C., Louis M. Tarasi, Jr., Tarasi, Tighe, Tierney & Johnson a/k/a d/b/a Employee Profit Sharing Plan, Trustees Tarasi & Tighe.**

**Bankruptcy Nos. 87–03487, 87–03488 and 88–00218.**
**Involuntary Motion Nos. 88–0161M, 88–0192M, 88–0160M, 88–0193M, 88–1076M, 88–0779M and 88–0780M.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 7, 1988.

Donald L. Phillips, Phillips and Galanter, Pittsburgh, Pa., for debtor.

John T. Tierney, III, Greenlee, Derrico, Posa, & Harrington, Washington, Pa., pro se.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the Court are motions filed on behalf of the alleged involuntary Debtors [1] requesting sanctions against John T. Tierney, III, an attorney appearing *pro se* (hereinafter petitioning creditor or Tierney) pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 303(i). In the Memorandum Opinion dismissing the involuntary cases which was previously filed by this Court on February 24, 1988, 82 B.R. 795, decision on these motions was reserved pending the submission of briefs. A Memorandum of Law in Support of the Motions has been filed on behalf of the alleged involuntary Debtors. Petitioning creditor has not filed answers to the motions nor did he file a brief. He did not participate in the hearings although he was present in court. As a preliminary matter, the Court notes that these motions were filed and the hearings held prior to the recent Third Circuit opinion in *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90 (3d Cir.1988). This Court had reserved decision on the issue of sanctions, which now must be addressed despite the entry of a final judgment dismissing the involuntary cases on February 24, 1988 and

---

1. The alleged Debtor at Bankruptcy No. 87–3487, a law firm, is referred to hereinafter as "the corporate Debtor" or "the corporation"; at Bankruptcy No. 87–3488 as "Tarasi", an attor-
ney; at Bankruptcy No. 88–218 as "the plan", the corporation's pension and profit sharing plan.

the expiration of the time to file an appeal from that order.[2]

## DISCUSSION

Incorporated by reference herein are the facts as recited in the Memorandum Opinion of February 24, 1988 and, with the following discussion, constitute this Court's findings of fact and conclusions of law on the issues of Bankruptcy Rule 9011 and § 303(i) sanctions.

In summary, the findings of February 24, 1988, are that the petitioning creditor's right to receive the vested portion of the plan fund was contingent on various events which had not occurred; that the plan had no creditors; that neither the corporation's nor Tarasi's debts were overdue; that Tarasi had no liability to Tierney under the plan nor for Tierney's salary as Tarasi was not a guarantor of any amounts which the plan or corporation may have owed Tierney; that the corporation was not liable for any amounts which the plan may have owed Tierney.[3]

The Court finds that Tierney is an experienced attorney who, by his own admission, has years of experience as a litigator in areas of complexity including antitrust matters. He also has appeared before the Bankruptcy bench in the Western District of Pennsylvania as special counsel to a Debtor in an unrelated case. Tierney, however, failed to exhibit his experience in the matters at bar. As detailed in the Memorandum Opinion of February 24, 1988, Tierney amended all three involuntary petitions several times, moving to convert cases from one chapter to another and back again, changing the amounts claimed to be owed him and, finally, deleting the plan claim from the corporate case. Notwithstanding the plain language of the plan, Trial Exhibit 2, which provides the circumstances and time periods in which a claim for vested benefits may be made and paid, and a letter dated January 15, 1988 from the plan advisory committee members explaining this, Trial Exhibit 7, Tierney persisted in filing and pursuing the involuntary bankruptcy petition against the plan.[4] *See also* Memorandum Opinion of February 24, 1988, at 10–12.

During the discovery period before the trial on the involuntary cases, Tierney violated this Court's Order which required discovery to be concluded on or before February 11, 1988. First, he filed several notices of deposition which covered a period extending beyond February 11. Secondly, the notices violated Local Bankruptcy Rule 7030.1 by including more than five non-party witnesses without leave of court. In addition, the notices were amended several times adding and deleting deponents and changing locations, thereby causing great confusion among the parties, the proposed deponents and their counsel, and the Court. Next, Tierney also failed to pay required witness fees and mileage in at least one instance. Furthermore, although discovery had been limited to the issues of whether or not the alleged Debtors were paying their debts as they became due, whether or not Tierney was a proper petitioning creditor, and the actual number of creditors, the subject matters Tierney intended to cover and the persons sought to be deposed by Tierney had no relationship to these issues.[5] Tierney's conduct resulted in sever-

---

2. Tierney timely filed an appeal but later withdrew it.

3. Although Tierney was a corporate employee, the question of who or what entity owed Tierney a salary was never reached by this Court based upon Tierney's acceptance of a check in full payment of his salary claim after he filed the involuntary petition and prior to the hearing thereon. The issue, therefore, became moot.

4. The letter of January 15, 1988 also advised Tierney that the plan's agent, Gateway Planners, Inc., would make the necessary determination of benefits payable and that Tierney would be paid in full before March 30, 1988.

5. Tierney filed various adversaries dealing with the same issues. The adversaries were dismissed by Order of this Court dated February 24, 1988. They alleged criminal conduct by Tarasi and various governmental figures. Some of the deponents had been noticed in order to pursue inquiry into matters which are not cognizable under the Bankruptcy Code. Tierney admitted this purpose at a hearing on motions for protective orders. Tierney's actions in this regard were in clear violation of this Court's discovery Order.

al proposed deponents moving for and being granted protective orders. It was finally resolved in Court between alleged Debtors' counsel and Tierney that Tierney would be limited to deposing five people and then only with respect to the issues to be determined under 11 U.S.C. § 303(b) and (h).[6] It was also resolved between counsel and Tierney that the depositions would be held at the offices of alleged Debtors' attorneys in Pittsburgh rather than at Tierney's office in Washington, Pennsylvania, inasmuch as the Pittsburgh location was convenient for all deponents and facilitated the production and use of various documents at the depositions.

Tierney ultimately scheduled only three depositions: those of Leonard Polk, John W. Powell and David E. Johnson. After the conclusion of the first deposition Tierney informed counsel for alleged Debtors that he had cancelled the deposition of Polk which had been scheduled second, and that he would return at 4:00 p.m. to depose the third and last witness. It was established at the hearing on the motions for sanctions that, upon conclusion of the first deposition, Tierney had returned to his office in Washington and conducted an *ex parte* deposition of Polk before returning to Pittsburgh to conduct the 4:00 p.m. deposition.[7] The credible evidence presented at the hearing on the motions for sanctions supports the conclusion that Tierney's purpose in conducting the *ex parte* deposition was to inquire into matters outside the scope of this Court's discovery Order.

This Court had ordered Tierney to post a bond in the plan case inasmuch as it appeared that under ERISA this Court lacked jurisdiction over the plan. In an effort to defeat this Order and the Court's discovery Orders, Tierney filed various actions in the District Court and petitioned for withdrawal of the reference or removal of the involuntary cases, depending on whether the District Court or the Bankruptcy Court

docket is consulted. The District Court treated Tierney's motion as an appeal and remanded the matter to this Court inasmuch as no order existed from which an appeal could lie. Tierney failed to post the bond and refused to participate in the hearings on the involuntary cases and the sanctions, alleging that this Court had no jurisdiction to determine the issues because he had petitioned for removal or withdrawal of the reference. Tierney's position is contradictory in view of the fact that he was the petitioning creditor and had proceeded through discovery.

Previously Tierney had attempted to have the involuntary bankruptcies consolidated with an unrelated bankruptcy case in which, as an employee of the alleged corporate Debtor herein, he had acted as special counsel to the Debtor. It is elementary that counsel for a Debtor in any bankruptcy case must file a fee petition with the court and have the requested fees approved by the court before payment may be made or becomes due. Tierney has not filed such a petition in the unrelated case. Accordingly, Tierney's allegation that any or all of the alleged Debtors herein owe him wages for his services in that case is premature at best. In attempting to claim fees from the alleged Debtors herein, which fees may or may not be due in another case, Tierney has evidenced wilful disregard for the law concerning fees in bankruptcies. Moreover, he has ignored the fact that he has a remedy as a professional retained in the unrelated case, and that his claim is not cognizable in this case.

Based on the foregoing and the facts as detailed in the Memorandum Opinion of February 24, 1988, and before the trial on the involuntary petition, alleged Debtors moved for the imposition of sanctions against Tierney pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 303(i). Sanctions and fees will be awarded inasmuch as

---

6. The five people permitted to be deposed were Leonard Polk, John W. Powell, David E. Johnson, John Tighe and Tarasi. Johnson and Tighe were members of the corporation at the time of trial. Polk and Powell had performed services for the corporation in the past.

7. The Court further notes that Johnson refused to sign his deposition as transcribed, alleging the existence of many omissions. This Court ordered that the court reporter's original notes be preserved.

this Court finds that Tierney acted in wilful disregard of the truth, without adequate investigation of the facts and the law, and for improper purposes.

Furthermore, Tierney purposely made it difficult for the Court and counsel to notify him of proceedings by refusing to reveal his correct address and phone number, causing this Court to require the Clerk of the Bankruptcy Court and alleged Debtors' counsel to serve him at four different locations and to contact him at four different telephone numbers to ensure that he had notice of proceedings and all entries of orders.

### I. BANKRUPTCY RULE 9011

Bankruptcy Rule 9011 provides:

*Signing and Verification of Papers.*
(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

■ Bankruptcy Rule 9011 is based on Federal Rule of Civil Procedure 11 and both impose an obligation to "stop, think, investigate and research" before filing papers which begin or prosecute court proceedings. *See generally Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987). The purpose is "to prevent abuse caused not only by bad faith but by negligence and, to some extent, by professional incompetence." *Id.* The question is whether the filed papers were "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" after reasonable inquiry under the circumstances. *Id.* Fees reasonable and fair under the circumstances are authorized. *Id.* at 483. In addition, "Rule 11 is intended for only exceptional circumstances." *Id.* *See also Morristown Daily Record, Inc. v. Graphic Communications Union Local 8N*, 832 F.2d 31, 32, n. 1 (3d Cir.1987).

■ This Court finds that exceptional circumstances exist in the instant cases to warrant the imposition of sanctions under Bankruptcy Rule 9011. Tierney's multiple filings and amendments of most filings rendered it virtually impossible for counsel and the Court to determine the nature of the allegations made and against which alleged Debtor they were directed. Tierney's violation of applicable rules in pleading and practice before this Court and his violations of this Court's Orders as well as his multiple lawsuits all evidence total neglect of the duty to investigate operative facts and relevant law. The storm of pleadings and amendments filed by Tierney, almost without exception, were so defective under applicable law and rules as to justify the imposition of sanctions under Rule 9011 in the form of attorney's fees and costs. Tierney is an attorney with years of experience in the federal court system, yet he signed pleadings without investigating the underlying facts and which he composed in such an obfuscated manner that they were unintelligible. He

then amended the pleadings and later amended the amendments in an effort to delay adjudication of the issues, harass the alleged Debtors and increase the costs of litigation, the time needed to defend the allegations and the Court's time needed to schedule and conduct hearings. He then appeared at hearings but refused to participate, thereby further increasing the time, effort and costs associated with these cases. His blatant violations of the rules of procedure and his flagrant disregard for the facts and law are grounds for the imposition of sanctions under Bankruptcy Rule 9011 in view of this Court's finding that his conduct was intended to cloud the issues and bludgeon alleged Debtors into making payments not due.

With respect to Tierney's failure to investigate the facts, the Court finds that at all times prior to and during the pendency of the involuntary cases Tierney had access to the information needed to make a reasonable good faith inquiry into the facts necessary to establish the elements of 11 U.S.C. § 303(b) and (h). Testimony established that before he filed any of the involuntary cases, Tierney visited the corporation's offices with an accountant and examined some of the books. Testimony further established that Tierney filed the involuntary cases with knowledge that there was no basis in law or in fact to do so. No arguments to modify, extend or reverse existing law were presented by Tierney. The petitions as filed relied upon stale information and Tierney acknowledged that he had made no effort to ascertain current information concerning what creditors may have existed or whether alleged Debtors were generally not paying their debts as they became due. The Court finds that Tierney's actions were geared entirely toward harassing alleged Debtors into payment of money which was not due and owing and, therefore, his actions were for an improper purpose. Accordingly, sanctions are warranted under Bankruptcy Rule 9011.

## II.  11 U.S.C. § 303(i)

Section 303(i) of the Bankruptcy Code provides that

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment (1) against the petitioners and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for (A) any damages proximately caused by such filing; or (B) punitive damages.

Although only one recovery of attorney's fees and costs is appropriate, an award is proper in this case pursuant to 11 U.S.C. § 303(i)(1) as well as under Bankruptcy Rule 9011. The instant cases were dismissed "other than on consent of all petitioners and the debtor" and the alleged Debtors have not waived their right to judgment. 11 U.S.C. § 303(i). An award of relief is discretionary with the Court and the mere fact that the conditions precedent to the allowance of costs and fees permitted by § 303(i)(1) are met is enough to warrant the exercise of this Court's discretion in favor of such an award. Although the Court has found that Tierney acted in bad faith, such a finding is not a prerequisite to the awarding of these amounts under § 303(i)(1). *In Re Allen Rogers & Co.,* 34 B.R. 631, 633 (Bankr.S.D.N.Y.1983); *In Re Camelot, Inc.,* 25 B.R. 861, 865 (Bankr. E.D.Tenn.1982). Accordingly, under the facts as recited above and in the Memorandum Opinion of February 24, 1988, an exercise of discretion in favor of an award to alleged Debtors of counsel fees and costs is proper. Counsel for alleged Debtors established expenses of $406.90 and fees of $12,668.50, for a total award of $13,075.40 after deducting a retainer of $8,500.00. The fees charged were $125.00 per hour for 112.5 hours of work by a partner in alleged Debtors' counsel's firm and $85.00 per hour for 83.6 hours of work by counsel's associate. The Court finds the fees to be reasonable and fair and that the hours expended were necessary in order to adequately represent alleged Debtors in the matters before this Court. The Court also finds that the expenses were reasonable and necessary.

### III.  11 U.S.C. § 303(i)(2)

In deciding whether to award "damages proximately caused" by the filing of the involuntary cases or in deciding whether to award punitive damages pursuant to § 303(i)(2)(A) and (B), a finding of bad faith on the part of the petitioning creditor must be made.  As recited above, Tierney used the involuntary proceedings as a substitute for ordinary collection procedures.  *See In Re SBA Factors of Miami, Inc.,* 13 B.R. 99 (Bankr.S.D.Fla.1981). He also failed to fulfill his duty to investigate and research the facts and law.  He evidenced wilful disobedience of Court orders and duplicity with respect to the deposition of Leonard Polk.  He caused parties and non-parties to expend money and time in requesting protective orders and in otherwise defending themselves against charges and procedures that were unsupported in fact, unjustified under the law or rules, inappropriate in a bankruptcy context, and violative of court orders and bankruptcy laws, rules and procedure.  Tierney engineered jurisdictional issues in order to avoid the effects of discovery orders when those orders did not suit his purposes.  All these actions were taken in an attempt to force alleged Debtors into a settlement of what, charitably termed, was essentially a contract dispute or the result of ill feelings stemming from the termination of his employment.  Accordingly, the Court will award certain compensatory damages under § 303(i)(2)(A).

Tarasi and David E. Johnson, both members of the corporation and of the Advisory Committee of the plan, testified as to their hourly rates and the hours they expended in defending the allegations made in the involuntary bankruptcy proceedings, which hours otherwise would have been spent in pursuing the work of the corporation.  Tarasi testified that he generally works on a contingent fee basis but in some circumstances his hourly charge ranged from $150.00 to $250.00.  The particular amount that would have been billed during the hours spent on defending the involuntary cases could not be established; therefore this Court awards damages to the corporation for the loss of Tarasi's time at the $150.00 per hour rate.

Johnson testified that he usually works on a contingent fee basis and that his hourly rate ranges between $80.00 and $150.00 per hour.  Because the actual amount that he would have earned could not be established, the corporation is awarded compensatory damages for the loss of Johnson's time at the rate of $80.00 per hour.

Tarasi expended 89.5 hours at $150.00 per hour and Johnson expended 45.15 hours at $80.00 per hour.  Because Tarasi and Johnson are corporate employees, the corporation is entitled to the sum of $13,425.00 for Tarasi's time and $3,612.00 for Johnson's time.

The Court finds that there was insufficient evidence to sustain an award of compensatory damages to Tarasi or Johnson personally.  Although Tarasi testified that he had been advised to withdraw a loan application, his withdrawal was voluntary; the bank had not refused him credit and Tarasi showed no money loss proximately resulting from being denied this loan.

Tarasi and Johnson both testified that they suffered personal humiliation caused by offers of financial help from friends and acquaintances but no money damages were shown to have arisen from the situations described.  There was testimony that a newspaper article appeared concerning the filing of the involuntary cases but no evidence was presented of damages proximately caused by this article.

In addition Johnson was not alleged to be a Debtor except insofar as his name is part of the corporation's name and he is a member of the Advisory Committee of the plan. Accordingly, he could make a claim under § 303(i) only on behalf of the corporation. Johnson testified that the corporation lost five employees soon after the filing of the involuntary cases but he admitted that none stated that the filing of the involuntary cases was their reason for leaving. Even if such a reason could be inferred under the facts, no evidence was presented to establish the cost to the corporation of the loss or replacement of the employees.

In short, except for Tarasi's and Johnson's earnings, evidence supporting the claim for compensatory damages under § 303(i)(2)(A) was insufficient or speculative. Speculative damages cannot be awarded. *See, In Re Camelot,* 25 B.R. 861, 868 (Bankr.E.D.Tenn.1982).[8]

Section 303(i)(2)(B) provides that the Court may award punitive damages if the involuntary petition was filed in bad faith. In Pennsylvania punitive damages are defined as: "damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct."[9] Although the Court finds that Tierney acted in bad faith and that his conduct was outrageous, in the exercise of the Court's discretion it finds that the award of compensatory damages and attorney's fees and costs is a sufficient sanction against Tierney. Punitive damages will not be awarded.

### CONCLUSION

Alleged Debtors are entitled to an award of attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) or Bankruptcy Rule 9011. Only the corporate Debtor is entitled to recover compensatory damages under § 303(i)(2)(A).

An appropriate Order will be entered.

---

8. The plan was not shown to have suffered any monetary loss whatsoever except insofar as it might be liable for attorney's fees. The work on behalf of each alleged Debtor necessarily overlapped due to the similarity of the allegations and the relationship among the parties. The Court has not been asked to determine the relative portion of fees to be borne by each alleged Debtor and will not do so. This matter, therefore, is one to be resolved among the alleged Debtors.

9. "Outrageous conduct" is defined as "acts done with a bad motive or with a reckless indifference to the interests of others." *Medvecz v. Choi,* 569 F.2d 1221 at 1226 (1977), citing IV RESTATEMENT OF THE LAW OF TORTS, § 908(1), Comment (b) (1939).