**In re JOHNSTON HAWKS LIMITED, a Hawaii corporation, Debtor.**

**Bankruptcy No. 85–00067.**

United States Bankruptcy Court,
D. Hawaii.

April 9, 1987.

**362**

Michael A. Yoshida, Honolulu, Hawaii, for Johnston Hawks.

William H. Lawson, Honolulu, Hawaii, for Champion.

Burton R. Berman, San Diego, Cal., for petitioning creditors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DAMAGES

JON J. CHINEN, Bankruptcy Judge.

On February 5, 1985, Chicago Credit Services ("Chicago Credit"), Champion Mortgage Company ("Champion") and MPI Consultants ("MPI") (collectively called "petitioning creditors") filed an Involuntary Petition Under Chapter 7 of the Bankruptcy Code against Jack J. McGarrity, an individual ("McGarrity"), and Johnston Hawks Limited, a Hawaii corporation ("Johnston Hawks"). The Involuntary Petition was never served upon either McGarrity or Johnston Hawks.

On March 12, 1985, McGarrity and Johnston Hawks filed a Motion for An Order Dismissing Proceedings and Assessing Attorneys' Fees and Costs, Damages and Punitive Damages or, in the Alternative, Requiring Petitioning Creditors to file a Bond, together with a memorandum, affidavit and exhibits in support of the Motion. Dismissal was requested pursuant to §§ 303, 305 and 707 of the Bankruptcy Code and Rule 9013 of the Bankruptcy Rules.

A hearing on the Motion was held on March 20, 1985. At this hearing, Johnston Hawks and McGarrity were represented by Steven H. Levinson, Esq. and Michael A. Yoshida, Esq.; the petitioning creditors were represented by Don J. Gelber, Esq. and Robert J. Faris, Esq. At the conclusion of the hearing, this Court dismissed McGarrity, individually, from these proceedings and further ruled that a subsequent hearing would be scheduled to determine the amount of his attorneys' fees and costs and damages and whether these amounts, together with punitive damages, should be assessed against the petitioning creditors. On May 24, 1985, this Court entered an order dismissing the involuntary proceeding in its entirety and further reserved jurisdiction to determine and grant judgment for the amounts due and owing to the alleged debtors. *In re Johnston Hawks*, 49 B.R. 823 (Bankr.D.Haw.1985).

Thereafter, on August 16, 1985, McGarrity and Johnston Hawks filed a Motion for a Judgment Against Petitioning Creditors in Favor of the Alleged Debtors For: 1) Costs; 2) Reasonable Attorneys' Fees; 3) Damages, and 4) Punitive Damages ("Motion"). Hearings on the Motion were held on October 30, 1985, October 27, 1986, November 18, 1986 and December 3, 1986.

Throughout these proceedings, Johnston Hawks and McGarrity were represented by Steven H. Levinson, Esq. and Michael A. Yoshida, Esq. The petitioning creditors have been represented by several different attorneys. First, Don J. Gelber, Esq., Robert J. Faris, Esq., and Renton Nip, Esq. represented the petitioning creditors in connection with the motion to dismiss filed by McGarrity and Johnston Hawks. Second, with respect to the present Motion, Alvin T. Ito, Esq. initially represented the petitioning creditors. Following Mr. Ito's withdrawal based upon a conflict of interest, Burton R. Berman, Esq., an attorney not admitted to practice before this Court, continued as attorney of record for the petitioning creditors. William H. Lawson, Esq. subsequently appeared as counsel for Champion only.

There are two primary issues before this Court:

1. Whether this Court should grant judgment in favor of McGarrity and Johnston Hawks against the petitioning creditors for costs and reasonable attorneys' fees pursuant to Section 303(i)(1) of the Bankruptcy Code?

2. Whether this Court should grant judgment in favor of McGarrity and Johnston Hawks against the petitioning creditors for damages proximately caused by the filing of the Involuntary Petition and punitive damages pursuant to section 303(i)(2) of the Bankruptcy Code?

Based upon the evidence adduced, the records and files herein and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On February 5, 1985, the petitioning creditors filed a joint Involuntary Petition Under Chapter 7 of the Bankruptcy Code ("Involuntary Petition") against McGarrity and Johnston Hawks.

2. Joint petitions under the Bankruptcy Code are permitted only between husband and wife. In this case, McGarrity is an individual and Johnston Hawks is a Hawaii corporation. Thus, the Involuntary Petition was defective. *See* Section 302 of the Bankruptcy Code.

3. The petitioning creditors admit in the pleadings filed on their behalf that McGarrity was improperly named in the Involuntary Petition.

4. McGarrity and Johnston Hawks were not served with the Involuntary Petition. They first learned of the filing of the Involuntary Petition from a reporter for The Pacific Business News ("PBN"), a business newspaper. As a result of the filing of the Involuntary Petition, articles announcing the filing appeared in the February 11, 1985 edition of the PBN.

5. McGarrity is a licensed architect and is the principal of Jack J. McGarrity AIA/Associates, Ltd.

6. Johnston Hawks is a Hawaii corporation which is wholly owned by McGarrity and his wife. Johnston Hawks' principal business was the development of a time-share resort, known as the "Shadow Hawk" project ("Project"), located in Welches, Oregon.

7. The Involuntary Petition was filed by three creditors who contended that they were holders of claims against McGarrity and Johnston Hawks with respect to the financing of the Project. Champion asserted that it was a holder of a claim in the amount of $150,000.00 for its services as a bond broker. MPI contended that it was a holder of a claim in the amount of $120,-000.00 for its services as the interim loan broker. Chicago Credit asserted that it was a holder of a claim in the amount of $10,000.00, based upon an assignment of a promissory note which was originally held by Champion.

8. McGarrity and Johnston Hawks contested the Involuntary Petition and the issue of liability to any of the petitioning creditors.

9. Since the dispute concerning the alleged debts arising from the Project between McGarrity and/or Johnston Hawks, on the one hand, and the petitioning creditors, or any of them, on the other hand, is not currently before this Court, the Court will not address the merits of these claims.

10. Prior to the filing of the Involuntary Petition, Burton R. Berman ("Berman"), who is general counsel for Champion, as well as a principal thereof, proposed a settlement of the dispute on behalf of Champion, MPI and Mortgage Consultants, Inc. Berman proposed that the aforementioned entities would bring a legal action against McGarrity and Johnston Hawks in the state circuit court in Honolulu. McGarrity and Johnston Hawks would then stipulate to a judgment which would enable Berman to execute on whatever assets were available. McGarrity and Johnston Hawks would not agree to this procedure.

11. Initially, Champion, through Berman, urged Mortgage Consultants, to be one of the petitioning creditors along with Champion and MPI and transmitted an original draft of the Involuntary Petition for signature. However, Mortgage Consultants refused to be named as a petitioning

creditor and returned the involuntary petition to Berman unsigned.

12. Berman then filed the Involuntary Petition with Chicago Credit substituted as a petitioning creditor in place of Mortgage Consultants. With respect to Chicago Credit, this Court has ruled that:

> Chicago Credit's claim against the Debtor is based on its status as a transferee of a promissory note originally made by the Debtor in favor of Champion. It is noteworthy that Chicago Credit's claim is not the result of any direct transactions between the Debtor and Chicago Credit.
>
> ....
>
> Chicago Credit presented a copy of the promissory note from the Debtor to Champion. However, there is a conspicuous absence of any document evidencing the debtor between Champion and Chicago Credit. There is no information in the files with respect to the nature of Champion's debt to Chicago Credit. Likewise, Chicago Credit failed to annex to the petition all documents evidencing the transfer of the promissory note from Champion to Chicago Credit. Chicago Credit has merely presented the Affidavit of Vincent Coniglio, the President of Champion....
>
> ....
>
> ... In addition, the Court is aware that the transfer of the promissory note was made only a few months prior to the filing of the involuntary petition. For the above-mentioned reasons, the Court finds that Chicago Credit's claim was subject to a bona fide dispute at the filing of the involuntary petition. As such, Chicago Credit may not be a petitioning creditor.

*In re Johnston Hawks*, 49 B.R. at 831.

13. Prior to the filing of the Involuntary Petition, in addition to Mortgage Consultants, Berman contacted several other creditors of McGarrity and Johnston Hawks, asking them to join in the Involuntary Petition; however, they refused to do so.

14. The petitioning creditors attempted to use the Involuntary Petition against McGarrity and Johnston Hawks as leverage in order to force Glacier General Assurance Company ("Glacier"), a bonding company, into agreeing to release certain funds from an escrow account in order to pay their claims. Glacier had issued a financial guaranty bond to cover the payments to the lenders who had refinanced the Project. The petitioning creditors believed that Glacier's consent was required before payment of funds would be made to them and further believed that Glacier was withholding its consent.

15. By virtue of the foregoing, the petitioning creditors made improper use of the Bankruptcy Code as a substitute for customary collection procedures.

16. Following the filing of the Involuntary Petition and the appearance of the PBN article, McGarrity and Johnston Hawks suffered adverse consequences. McGarrity's credit cards were revoked and questions were raised concerning the integrity and solvency of McGarrity and Johnston Hawks.

17. McGarrity, also suffered through his architectural firm of Jack J. McGarrity AIA/Associates, Ltd. ("AIA/Associates"), as a result of the filing of the Involuntary Petition. Prior to the filing of the Involuntary Petition, AIA/Associates performed architectural services in more than twenty projects for the Naval Facilities Engineering Command Pacific Division ("PacDiv").

18. PacDiv jobs are not competitively bid; rather the "contractors" are selected by merit. The financial responsibility of any proposed "contractor" is important to PacDiv. Prior to the filing of the Involuntary Petition, AIA/Associates had received an oral representation from a representative of PacDiv that it would enter into negotiations with AIA/Associates for a project. Based upon past practice, it was possible that AIA/Associates may have been awarded the PacDiv project.

19. However, after the filing of the Involuntary Petition against McGarrity, AIA/Associates was advised by PacDiv that it would not be awarded the contract. The current design director for PacDiv, Eric Takai, who was a deputy at the time

the Involuntary Petition was filed, believed that the Involuntary Petition was filed against AIA/Associates.

20. McGarrity as an individual would have received approximately $25,287.50 in income from the PacDiv project.

21. Following the filing of the Involuntary Petition, AIA/Associates has applied for PacDiv projects but has not received a single contract.

22. After a hearing, the Involuntary Petition was dismissed with respect to McGarrity on March 27, 1985, and with respect to Johnston Hawks, on May 24, 1985. No appeal was taken from these dismissals.

23. In connection with the Involuntary Petition, McGarrity and Johnston Hawks, through October 31, 1986, have incurred attorneys' fees of $29,087.30 and costs of $1,060.47.

24. In addition, McGarrity and Johnston Hawks have incurred the sum of $1,959.72 for travel expenses, lodging and miscellaneous expenses for their mainland witness.

■ 25. In light of the complexity of this case and the issues involved, the aforementioned attorneys' fees, costs and expenses for McGarrity and Johnston Hawks are fair and reasonable.

26. Based on the foregoing findings, the petitioning creditors filed the Involuntary Petition in bad faith.

27. These Findings of Fact, insofar as they may be deemed to be Conclusions of Law, are incorporated therein by reference.

## CONCLUSIONS OF LAW

### I. Attorney's Fees and Costs

When an involuntary petition is dismissed, the bankruptcy court may award reasonable attorney's fees and costs, under § 303(i)(1) of the Bankruptcy Code, which provides:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;

(B) a reasonable attorney's fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

■ Although the award of attorney's fees and costs is discretionary, § 303(i) routinely contemplates the award of attorney's fees and costs to the prevailing debtor. *In re Howard, Neilson & Rush, Inc.,* 2 B.R. 451 (Bankr.M.D.Tenn.1979).[1] Attorney's fees and costs may be awarded under § 303(i)(1), regardless of whether the petition was filed in bad faith. *In re Advance Press & Litho, Inc.,* 46 B.R. 700, 703 (D.Colo.1984). Nor is it necessary for the court to have found that the involuntary petition was frivolous or meritless. *Id.* at 703–03. In a factually similar case, the United States Court of Appeals for the Sixth Circuit affirmed the award of attorney's fees and costs to the prevailing alleged debtor when one of the three petitioning creditors proved not to be a creditor. *In re Cooper School of Art, Inc.,* 709 F.2d 1104, 1105 (6th Cir.1983).

■ McGarrity and Johnston Hawks were forced to hire counsel to respond to

---

1. In *In re Howard* was decided under Rule 115(e) of the Bankruptcy Act, in which the opinion specifically noted that "Rule 115(e) contemplates a *routine* award of costs and counsel fees to the prevailing party upon dismissal ... of an involuntary petition. No bad faith need be shown.... This is the Rule of the New Bankruptcy Code, 11 U.S.C. § 303(i)." 2 B.R. at 454 (emphasis in the original). Rule 1013 of the Bankruptcy Code is the correlative rule to Rule 115(e) of Bankruptcy Act. The Advisory Committee Notes to Rule 1013 state that "[s]ubdivision (e) of former Bankruptcy Rule 115 has not been carried over because its provisions are covered by § 303(i) of the Code." *See* Rule 1013.

the Involuntary Petition, incurring attorney's fees of $29,087.30 and costs of $3,020.19. The legal battle initiated by the filing of the petition has endured over two years. This Court finds that McGarrity and Johnston Hawks, as the prevailing alleged debtors, should be awarded reasonable attorney's fees and costs against the petitioning creditors, jointly and severally, under § 303(i)(1) of the Bankruptcy Code.

## II. Proximately Caused/Punitive Damages

The legislative history of § 303(i) makes clear that damage awards under §§ 303(i)(1) and 303(i)(2) can be made alternately or cumulatively, because the use of the word "or" in § 303(i) "is not exclusive in this paragraph. The court may grant any and all of the damages provided for under this provision" H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 34 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5820, 6280. *See also In re Camelot, Inc.*, 25 B.R. 861, 868 (Bankr.E.D.Tenn.1982); *In re Ramsden*, 17 B.R. 59, 61 (Bankr.N.D.Ga. 1981); 2 Collier on Bankruptcy ¶ 303.39 (15th ed. 1985). Thus, if warranted, additional damages may be assessed under § 303(i)(2).

Section 303(i)(2) allows for the award of punitive damages or damages proximately caused by the filing of the involuntary petition or both. However, these damages may be awarded only if the Involuntary Petition was filed in bad faith. *See Camelot, Inc. v. Hayden*, 30 B.R. 409, 411 (D.C. Tenn.1983). Like § 303(i)(1), an award of damages under § 303(i)(2) is within the court's discretion.

Because the Bankruptcy Code does not define bad faith, courts have travelled differing paths to award damages under § 303(i)(2). Two basic perspectives have developed on the existence of bad faith. One view finds "bad faith" to exist where the petition is motivated by ill will, a sense of malice, or to embarrass or harass the debtor. *See Camelot, Inc. v. Hayden*, 30

B.R. at 411 (citing 2 Collier on Bankruptcy ¶ 303.12 (15th ed. 1979)); *In re Advance Press*, 46 B.R. at 703–05. For example, in *In re Camelot*, the court found that the involuntary petition was filed in bad faith where the petitioning creditor's motivation was to frustrate the alleged debtor's objectives in forestalling the dissolution of the debtor corporation. 25 B.R. at 864.

A second view finds "bad faith" to exist when the creditor's actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures. *In re Advance Press*, 46 B.R. at 703. *See also In re Nordbrock*, 772 F.2d 397, 399 (8th Cir.1985). In *In re SBA Factors of Miami, Inc.*, 13 B.R. 99, 100 (Bankr.S.D. Fla.1981), there was no evidence to show that the alleged debtor was not paying its debts as they came due or that it owed anything at all to the three petitioning creditors. The court found that the petition was filed in bad faith by using the involuntary proceeding as a substitute for customary collection procedures.

In a similar vein, bad faith has also been found where the petitioning creditor did not follow the provisions of the Bankruptcy Code. In *In re Ramsden*, the petitioning creditor's claim was less than the statutory requirement and he failed to obtain the consent of other creditors to support the petition. Therefore, the petition was "without legal justification." 17 B.R. at 60. The court noted that "[petitioner] had probably failed to consult the Bankruptcy Code before filing...." *Id.* Bad faith was also found where the single petitioning creditor failed to made additional inquiries to determine the number of claim holders and the amounts of their claims to "save[ ] Godroy the stigma of bankruptcy." *In re Godroy*, 37 B.R. 496, 500 (Bankr.D.Mass. 1984). The fact that the petitioning creditor may have acted on poor legal advice did not "negate bad faith and excuse [his] indifferent behavior." *Id.* Thus, bad faith has been found under a broad range of different circumstances.[2]

---

**2.** One court developed an "objective test" to measure bad faith. The test was "what a rea-

sonable person would have believed." *In re Grecian Heights Owners' Association*, 27 B.R.

■ In the instant case, the petitioning creditors did not follow the provisions of the Bankruptcy Code. The petitioning creditors improperly named both McGarrity, an individual, and Johnston Hawks, a corporation, in the Involuntary Petition. *See* Bankruptcy Code § 302. In addition, the petitioning creditors did not serve the alleged debtors, who learned about the Involuntary Petition from an inquiring newspaper reporter. Further, had the petitioning creditors reviewed the underlying claim of Chicago Credit with care, they may have seen that Chicago Credit's claim was subject to a bona fide dispute. It was this disputed claim that lead to the dismissal of the Involuntary Petition. *In re Johnston Hawks*, 49 B.R. at 832. While these actions could be interpreted as constituting ill will, malice, harrassment, or acting on poor legal advice as bad faith, they could also be interpreted as actions on the part of the petitioning creditors to use the bankruptcy court as a collection device in initiating this two year legal battle.

There is additional evidence indicating that petitioning creditors attempted to use the Involuntary Petition as a substitute for customary collection procedures by forcing a bonding company's consent to release funds from an escrow account to pay some of the petitioning creditors' claims. Also, petitioning creditors were aware that the appropriate vehicle to resolve their dispute with McGarrity and Johnston Hawks was a contract action in a non-bankruptcy forum. Petitioning creditors "may not use an impermissible means to achieve [even] an otherwise legitimate goal." *Camelot, Inc. v. Hayden*, 30 B.R. at 411.

Given the petitioning creditors' collective actions in the instant case, it is clear that the Involuntary Petition was filed in bad faith. Since bad faith has been established, punitive damages may be awarded.

172, 173 (Bankr.D.Or.1982). The court applied this test to find a petitioner acted unreasonably in filing an involuntary petition after consulting numerous attorneys who advised him not to file, but then followed the advice of a non-lawyer to file. The court found that the petitioner acted in bad faith and awarded punitive damages.

■ The purpose of punitive damages is to deter similar acts in the future, both by the petitioning creditors and to serve as an example for others in similar circumstances. *In re Grecian Heights*, 27 B.R. at 174. *See also In re Advance Press*, 46 B.R. at 706; *Camelot, Inc. v. Hayden*, 30 B.R. at 411; and *In re SBA Factors*, 13 B.R. at 101. A second purpose for punitive damages is to punish the petitioning creditors for wrongdoing in filing the petition in bad faith. *In re Camelot*, 25 B.R. at 868; *In re Advance Press*, 46 B.R. at 706.

In a recent case, the Ninth Circuit Bankruptcy Appellate Panel found bad faith in the filing of an involuntary petition. In *In re Wavelength*, 61 B.R. 614 (Bankr. 9th Cir.1986), the court found that the petition had been filed "with the sole intent of pressuring [the alleged debtor] into withdrawing from Debtor's business and selling his interest...." *Id.* at 618. The alleged debtor was not insolvent at the time of the filing. The petitioning creditors, the alleged debtor's former business partners, acted with ill will towards the debtor and its owners, by acting without authority in the debtor business, by concealing the bankruptcy from a state court and by one of the creditors failing to inform the court that he had a share in the business. The court affirmed the punitive damage award of $20,000, as well as attorney's fees and costs of $46,881.50. *Id.* at 622.

As the court in *In re SBA Factors* aptly noted:

An allegation of bankruptcy is a charge that ought not to be made lightly. It usually chills the alleged debtor's credit and his sources of supply. It can scare away customers. It leaves a permanent scar, even if promptly dismissed.

13 B.R. at 101. McGarrity and Johnston Hawks, the alleged debtors, suffered some of the adverse consequences contemplated

However, the objective test is actually a subjective one, and "[i]n the final analysis, whether a party has acted in bad faith or not is essentially a *question of fact to be determined by the court." In re Advance Press*, 46 B.R. at 704 (emphasis added).

by the court in *In re SBA Factors.* Newspaper articles were published about the filing of the Involuntary Petition, McGarrity's credit cards were revoked, and numerous phone calls and inquiries were received about the alleged debtors' solvency.

Additionally, after the filing of the Involuntary Petition, McGarrity's architectural firm, AIA/Associates, was advised it would not receive a contract from PacDiv, a previous client, for a particular project. Before the filing, McGarrity had received an oral representation that PacDiv would negotiate with AIA/Associates for the project, which would have provided income of $25,087.30 to McGarrity. This business loss is one that was considered by the Bankruptcy Code.

Under § 303(i)(2)(A), the court may award any damages proximately caused by the bad faith filing. The legislative history states that "[t]hese damages may include such items as loss of business during and after the pendency of the case, and so on." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 34 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5820, 6280.

■ Because the Involuntary Petition was filed in bad faith for misuse of the bankruptcy court as a substitute for customary collection procedures and misuse of the Bankruptcy Code, this Court awards damages of $25,287.50 proximately caused by the filing under § 303(i)(2)(A) to McGarrity and Johnston Hawks. This Court also awards punitive damages of $10,000 under § 303(i)(2)(B). These awards are in addition to the award of attorney's fees of $29,087.30 and costs of $3,020.19 under §§ 303(i)(1)(A) and (B). All damages are awarded jointly and severally against all petitioning creditors.