**In re Eugene SILVERMAN, Alleged Debtor.**

**Bankruptcy No. 97–51842.**

United States Bankruptcy Court, D. New Jersey.

Nov. 13, 1998.

---

48

Alan S. Maza, Lehman, Lehman & Gruber, Livingston, NJ, for Alleged Debtor.

Eric Goldring, Goldring & Goldring, Red Bank, NJ, Steven Jurista, Wasserman, Jurista & Stolz, Millburn, NJ, for Petitioner Michael Cantor.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the court on the alleged debtor's motion for the imposition of punitive damages against the petitioning creditor. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). For the following reasons, the motion for punitive damages is granted in the amount of $50,000.

### I. FINDINGS OF FACT

In the instant case, a single petitioning creditor, Michael Cantor ("Cantor" or the "petitioner") filed an involuntary chapter 7 petition on October 24, 1997 under section 303 of title 11, United States Code ("Bankruptcy Code" or "Code") against Eugene Silverman ("Silverman" or the "alleged debtor"). Cantor and Silverman had been friends and business associates for many years. They had engaged in many business ventures. Cantor has a stipulated net worth of $30,000,000. Silverman is a person of considerably more limited means. For reasons which are unclear from the record, their relationship turned sour and Cantor sued Silverman in the Superior Court of New Jersey on a $200,000 promissory note. Cantor moved for summary judgment, and in the alternative for partial summary judgment. That motion was denied on August 22, 1997.

As that case continued, Cantor prepared to file the involuntary bankruptcy case against Silverman. Cantor ordered a Uniform Commercial Code (U.C.C.) search and a judgment search against Silverman. Cantor did not inform the court, however, of the results of those searches. Although the standard under section 303(h)(1) of the Bankruptcy Code for entry of an order for relief in an involuntary case is that the debtor is generally not paying his debts as they come due, Cantor did not order a credit report on Silverman. Had he done so, Cantor would have discovered, as Silverman did by obtaining a credit report on himself on October 22, 1997, that of 31 reported accounts, every one reported the history as "never late" or "paid as agreed." Moreover, a creditor does not have standing under Code section 303(b)(1) to file an involuntary bankruptcy petition if his claim is the subject of a bona fide dispute. Although Cantor's motion for summary judgment or for partial summary judgment was denied in state court on August 22, 1997, he nevertheless filed an involuntary bankruptcy petition against Silverman.

Silverman filed an answer to the involuntary petition denying that Cantor had standing and arguing that the state court's denial of Cantor's motion for summary judgment conclusively established that his claim was the subject of a bona fide dispute. Furthermore, in his answer, Silverman argued that the petitioner failed to comply with the section 303 requirement that 3 or more creditors must join in the petition where the alleged debtor has 12 or more creditors. On December 29, 1997, Silverman filed a motion to dismiss the involuntary bankruptcy and for the imposition of sanctions and damages based on the allegations stated in the answer.

In the hearing on the motion to dismiss, the court ruled that because of the superior

court's denial of Cantor's motion for summary judgment, principles of issue and claim preclusion prohibited Cantor from arguing that the existence and amount of his claim was not the subject of a bona fide dispute. In disputing that principles of issue preclusion applied as a result of the superior court's denial of summary judgment, Cantor denied that partial summary judgment had been requested in the alternative. Cantor made this argument in an attempt to convince this court that the superior court had not ruled that there was a genuine issue of material fact as to the entire amount of the debt. He sought to convince the court that at least $10,000 of the alleged debt was undisputed, so that Cantor would have standing under Code section 303(b)(1) to file an involuntary petition. The transcript of that hearing in the superior court plainly discloses, however, that Cantor did request partial summary judgment and that such request was also denied. This court held that the petitioner had no standing to file the involuntary petition and on February 13, 1998 the court entered an order dismissing the petition. Since dismissal was warranted based upon a finding of a bona fide dispute, the court did not decide whether the numerosity requirements of section 303(h)(1) of the Code were satisfied, although Silverman contends that he had more than 12 creditors at that time as well.

The court held that Silverman was entitled to all costs and attorney's fees associated with the involuntary proceeding under Code section 303(i)(1), including those incurred after dismissal of the petition. The court further concluded that Cantor acted in bad faith by filing the petition after the state court held that genuine issues of material fact existed with respect to the alleged debt. The court dismissed the involuntary petition, but retained jurisdiction to determine fees, costs and damages.

Cantor filed a motion for reconsideration in which he argued that the claim was not the subject of a bona fide dispute, alleging that Silverman admitted in a deposition taken on March 24 and 25, 1998 that money was currently due and owing and that he was fairly confident that the amount was greater than $50,000. However, the court held that whether a bona fide dispute exists is evaluated at the time the involuntary petition is filed. Bona fide disputes are eventually resolved by litigation or settlement, but it is the status of the dispute on the petition date which is crucial for standing under Code section 303(b)(1). On June 5, 1998 the court therefore denied the petitioner's motion for reconsideration.

On August 10, 1998, a hearing was held on Silverman's request for fees, costs and damages pursuant to sections 303(i)(1) and 303(i)(2). Due to the difficulty of quantifying compensatory damages and the adverse effect discovery as to damages might have on his relations with other creditors, some of which Silverman alleges had already been damaged by the filing of the involuntary bankruptcy case, Silverman withdrew his request for compensatory damages on May 26, 1998. Therefore, the court limited its August 10th hearing to fees, costs and punitive damages. The court awarded attorney's fees and costs to the alleged debtor totaling $45,264.75 and $1242.90 respectively through August 4, 1998. On August 25, 1998, the court signed an order, entering judgment against Cantor in favor of Silverman in the amount of $46,507.65. The court retained jurisdiction, however, to consider any supplemental applications for fees and costs incurred in connection with the petitioner's involuntary filing. In the hearing on the request for damages the court ordered a supplemental certification of fees and costs to be filed within 7 days and a response to be filed within 7 days thereafter.[1]

The court acknowledged in the hearing on the request for damages that Silverman requested sanctions against the petitioner's former counsel in the letter memorandum dated

---

1. Except for the supplemental certifications on fees and costs, the court ordered at the hearing on the request for damages that no further submissions were to be made unless the court stated otherwise. Nevertheless, counsel for petitioner submitted a further letter memorandum in reference to the punitive damages issue dated September 24, 1998. As the court had ruled that no further papers were to be submitted, the letter memorandum will not be considered by the court.

August 4, 1998. Since the request for sanctions pursuant to Fed.R.Bankr.P. 9011 was not made by way of separate motion, it is not properly before the court and the court therefore declines to consider the issue at this time. The issue presently before the court is whether punitive damages are warranted, what factors are relevant to such a determination and, if punitive damages are warranted, what amount will satisfy the dual purposes of punishment and deterrence.

### Silverman's Position

Silverman asserts that punitive damages are warranted in the amount of $900,000. Recognizing that courts have not articulated a formula in measuring such damages, Silverman contends that damages should be evaluated on a case by case basis. Accordingly, the totality of the circumstances must therefore be considered, including the petitioner's intentions, the harm suffered by the alleged debtor and the petitioner's ability to pay. Silverman's request of $900,000 represents 3% of Cantor's net worth, which Silverman contends is an appropriate amount to effectuate the dual policies of deterrence and punishment without being unduly harsh.

### Cantor's Position

Cantor argues at length that the involuntary petition was not filed in bad faith and consequently, punitive damages are not authorized. Cantor asserts that Silverman acted in bad faith. In addition, Cantor argues that although the award of fees and costs is within the discretion of the court, such an award is not mandatory and the circumstances do not justify such an award. In his brief in opposition to the imposition of punitive damages, Cantor states "[e]ven if this Court were to ultimately find that Cantor acted in bad faith by filing the Involuntary Petition, due to the absence of egregious and malicious conduct, punitive damages should not be awarded." The court had, however, already found that the petition was filed in egregious bad faith in light of the state court ruling denying summary judgment. (Tr. of Hrg. on Mot. to Dismiss Invol. Petition at 22.) Furthermore, the court had also already rendered its decision on the imposition of attorney's fees and costs at the hearing on Silverman's motion to dismiss. Finally, Cantor contends that an award of $900,000 is excessive, unreasonable, oppressive and extreme in light of the totality of the circumstances.

## II. CONCLUSIONS OF LAW

■ Section 303(i) of the Bankruptcy Code authorizes the imposition of fees, costs and damages if an involuntary petition is dismissed without the consent of the debtor and all of the petitioning creditors. The Code section is permissive, however, leaving the assessment of fees, costs and damages to the exclusive discretion of the court. *In re Landmark Distributors, Inc.*, 189 B.R. 290, 316 (Bankr.D.N.J.1995); *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 905 (Bankr. N.D.Ill.1994); *In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr.N.D.Ill.1989); *In re Johnston Hawks Limited*, 72 B.R. 361, 365 (Bankr.D.Haw.1987); *see also, In re Tarasi & Tighe*, 88 B.R. 706, 711 (Bankr.W.D.Pa. 1988)(award of attorney's fees and costs is left to the court's discretion and is not predicated upon a finding of bad faith). Code section 303 states in relevant part:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>> (1) against the petitioners and in favor of the debtor for—
>>> (A) costs; or
>>> (B) a reasonable attorney's fee;
>> (2) against any petitioner that filed the petition in bad faith, for—
>>> (A) any damages proximately caused by such filing; or
>>> (B) punitive damages.

Use of the word "may" indicates that the imposition of fees, costs and damages is not mandatory. Following the majority approach under section 303(i)(1), this court noted in the hearing on the alleged debtor's motion to dismiss that although the court is not required to impose fees and costs on the petitioning creditor, typically they are awarded upon dismissal. See *In re K.P. Enterprise*, 135 B.R. 174, 177 (Bankr.D.Me.1992) in

which the court held that although there is no hard and fast rule regarding the award of fees and costs, fairness dictates that attorney's fees and costs should generally be awarded to the prevailing debtor. *See also, Johnston Hawks Limited,* 72 B.R. at 365; *In re Leach,* 102 B.R. 805, 808 (Bankr.D.Kan. 1989); *but cf., In re West Side Community Hospital, Inc.,* 112 B.R. 243, 257 (Bankr.N.D.Ill.1990)(stating that a finding of bad faith usually accompanies an award of fees and costs). Accordingly, the court awarded all fees and costs to the alleged debtor.

The imposition of punitive damages, unlike fees and costs, must be predicated upon a finding of bad faith, as the plain language of Code section 303(i)(2)(B) states. *In re Advance Press & Litho, Inc.,* 46 B.R. 700, 701 (Bankr.D.Col.1984); *Tarasi & Tighe,* 88 B.R. at 712. Having found that the petitioner's claim was the subject of a bona fide dispute by virtue of the state court's denial of summary judgment and partial summary judgment, the court held that the bad faith component of section 303(i)(2) was satisfied. The court cited *BDW Associates v. Busy Beaver Building Centers,* 865 F.2d 65, 66–67 (3d Cir.1989) in which the Third Circuit, applying an objective standard, held that the existence of a bona fide dispute, for purposes of standing under Code section 303(b) to file an involuntary bankruptcy, is measured by the summary judgment standard. *See also, In re Lough,* 57 B.R. 993 (Bankr.E.D.Mich.1986). Principles of issue preclusion compelled this court to conclude that a bona fide dispute exists with respect to the petitioner's claim, as the superior court already had determined that genuine issues of material fact existed. *See, First Jersey National Bank v. Brown (In re Brown),* 951 F.2d 564 (3d Cir.1991)(bankruptcy court is bound under principles of issue preclusion by state court's entry of summary judgment in a mortgage foreclosure proceeding even though court's ruling was not final for purposes of appeal). The court noted that typically the bankruptcy court determines whether a bona fide dispute exists by applying a summary judgment standard. If the petition is ultimately dismissed based upon a bona fide dispute, the court evaluates whether the petitioner acted in bad faith. Courts have applied a number of different tests in making that assessment including the improper use test, the improper purpose test, the subjective test, the objective test, and a combination subjective/objective test.[2] Other judges from the United States Bankruptcy Court for the District of New Jersey have applied the combination subjective/objective test. *In re Elsub Corp.,* 66 B.R. 189, 196 (Bankr.D.N.J.1986); *In re Landmark Distributors, Inc.,* 189 B.R. at 309–10 (following *K.P.Enterprise,* 135 B.R. at 179–80 in which the court recognized substantial similarities among the tests and held that objective and subjective factors are necessary for a complete section 303(i)(2) analysis). The court stated in *Landmark* that the many tests employed to measure bad faith often overlap. 189 B.R. at 310. Finding *Elsub* and *K.P.Enterprise* persuasive, the *Landmark* court held that the totality of the circumstances are relevant considerations in awarding fees and costs under section 303(i)(1) and compensatory and punitive damages under section 303(i)(2). 189 B.R. at 308, 317.

2. The improper use test questions whether the petitioning creditor used the involuntary bankruptcy process to obtain an improper advantage over other creditors rather than pursuing collection in the appropriate nonbankruptcy forum. *See e.g., In re Johnston Hawks Ltd.,* 72 B.R. at 367–68; *In re Better Care, Ltd.,* 97 B.R. at 411; *Basin Electric Power Cooperative v. Midwest Processing Company,* 769 F.2d 483, 487 (8th Cir. 1985). The improper purpose test questions the petitioning creditor's reason for filing the involuntary petition, focusing particularly on whether the petitioner sought to destroy the alleged debtor. *See, e.g., In re Salmon,* 128 B.R. 313, 315 (Bankr.M.D.Fla.1991) (bad faith found based on petitioning creditor's motive to force alleged debtor out of business). The improper purpose test is virtually identical to the subjective test which focuses on the creditor's state of mind and motivations for filing the petition. *See, e.g., In re Landmark Distributors,* 189 B.R. at 310. The objective test measures bad faith according to the reasonable person standard. *See, e.g., Id; In re Grecian Heights Owners' Association,* 27 B.R. 172, 173 (Bankr.D.Or.1982). The combined subjective/objective test which is patterned after Rule 9011 of the Fed.R.Bankr.P. is the most inclusive test, considering the petitioning creditor's motives and whether he acted as a reasonable person in filing the petition. *See, e.g., In re K.P. Enterprise,* 135 B.R. at 179–80; *In re Turner,* 80 B.R. 618, 622 (Bankr.D.Mass.1987).

In the instant case, the superior court had ruled that genuine issues of material fact existed regarding petitioner's claim before the petitioner filed the involuntary petition. Thus, this court found in the hearing on the involuntary petition that "the question is so clear that there's no conclusion that this Court can reasonably reach except that the petition was filed in bad faith." (Tr. of Hrg. on Mot. to Dismiss Invol. Petition at 27.) The petitioner commenced the involuntary bankruptcy with knowledge that the court in which he had sued had just ruled that his claim was the subject of a bona fide dispute. This court concluded that filing an involuntary petition after the state court's denial of summary judgment is "per se sufficient to prove that the creditor acted in bad faith." (*Id.*) Moreover, the court characterized such filing within weeks of the state court ruling as egregious bad faith and an improper use of the bankruptcy system. (*Id.* at 22, 33.) Thus, the court found that compensatory and punitive damages were authorized under section 303(i)(2).

■ Examination of the many cases addressing imposition of punitive damages under section 303(i)(2) reveals that the factors which support a finding of bad faith also justify imposition of punitive damages. Although punitive damages are not automatically imposed upon a finding of bad faith, a punitive damages award is predicated upon a finding of bad faith. Consequently, once the court has found bad faith, the court must decide whether punitive damages are appropriate and, if so, in what amount. This court agrees with the *Landmark* court's view that the totality of the circumstances must be considered in fashioning an appropriate award under section 303(i)(2). Therefore, although this court found that bad faith is established per se by filing an involuntary petition after denial of summary judgment in another forum, all mitigating or aggravating factors are nonetheless relevant in assessing punitive damages.

■ In imposing punitive damages on a petitioning creditor, the dual purposes of punishment and deterrence must be effectuated. Unlike compensatory damages, punitive damages are neither measured by actual loss nor are they measured strictly in light of the impact of the creditor's bad faith on the alleged debtor. *See In re Grecian Heights Owners' Association,* 27 B.R. at 174 (Bankr.D.Or.1982)(punitive damages operate as a deterrent rather than as compensation for actual loss). The United States Bankruptcy Court for the Middle District of Florida articulated the following factors as relevant in assessing punitive damages:

> the nature, extent, and enormity of the wrong, the intent of the party committing it and all circumstances attending the particular incident, as well as any mitigating circumstances which may operate to reduce without wholly defeating such damages, including financial position of defendant...

*Sjostedt v. Salmon, Jr. (In re Salmon),* 128 B.R. at 319 (citing *Rinaldi v. Aaron,* 314 So.2d 762 (Fla.1975)). Similarly, the *Elsub* court stated that "whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claimholders" all factor into a section 303(i)(2) award. 66 B.R. at 196. In addition, the *Elsub* court stated that all objective and subjective factors must be considered. *Id.*

In the instant case, the petitioning creditor commenced the involuntary bankruptcy shortly after the superior court ruled that genuine issues of material fact existed with respect to the existence and amount of the alleged debt. Rather than awaiting resolution of the state court proceeding, the creditor filed the involuntary petition with knowledge of the bona fide dispute, thereby using the bankruptcy court as a tool for collection in disregard of the section 303 requirements. *See Johnston Hawks Limited,* 72 B.R. at 367 (punitive damages awarded against petitioning creditor for bad faith filing where claim was subject to bona fide dispute and court found debtor made improper use of the bankruptcy system). This egregious bad faith was exacerbated by the petitioning creditor's blatant denial that partial summary judgment as to the existence of the debt was

requested in the state court proceeding when it had been requested. (Tr. of Hrg. on Mot. to Dismiss Invol. Petition at 13; Cert. In Supp. of Mot. for Reconsid. of Dismissal at 2.) The court described petitioner's and his counsel's denials of that request as "blatantly false." (Tr. of Telephone Conference on Mot. for Reconsid. of Dismissal at 12.)

In spite of the court's denial of his motion for reconsideration, Cantor still argues to this court in his memorandum of law in opposition to the imposition of damages that the filing was in good faith. Cantor argues, however, that even if the petition was filed in bad faith, it was neither egregious nor outrageous and therefore does not warrant imposition of damages. In support of his argument, Cantor states that he was motivated by his belief that Silverman was dissipating assets and by Silverman's alleged obstruction of discovery in the state court proceeding. Furthermore, Cantor argues that the petition was filed after performing due diligence and concluding in good faith that Silverman had fewer than 12 creditors. (Mem. In Opp. To Impos. of Damages at 19.)

Since the court has already ruled that the petition was filed in bad faith it will not revisit that issue. The court also previously awarded attorney's fees and costs to the alleged debtor in accordance with the majority view as articulated in *Landmark*. Accordingly, the court will not revisit the issue of fees and costs. The only issue presently before the court is whether to award punitive damages.

■■■ The court finds Cantor's arguments against punitive damages to be without merit. This court makes no finding regarding Silverman's alleged obstruction of discovery in state court except to hold that even if Silverman was obstructing discovery, such actions would be a basis for a motion to compel discovery, not an involuntary bankruptcy petition. In fact, that argument indicates that Cantor used the involuntary bankruptcy as an improper litigation tactic. Cantor's improper purpose is also apparent from his statement that he was advised that he would gain a strategic advantage by filing an involuntary petition. (Suppl. Cert. in Opp. to Impos. of Costs, Fees and Punitive

Damages ¶ 24.) Section 303 of the Code authorizes a creditor to file an involuntary petition to protect its claim against collection efforts by other creditors. Filing an involuntary petition with the intent to gain a strategic advantage, rather than to protect one's interest relative to other creditors or to prevent dissipation of assets, constitutes an improper purpose. In *In re Better Care, Ltd.*, 97 B.R. at 411, the bankruptcy court stated,

the proper purpose of a creditor filing an involuntary petition is to protect against other creditors obtaining a disproportionate share of the debtor's assets. The objective basis for the creditor's perception of disproportionate dismemberment of the debtor is linked to the pattern of the debtor not paying its debts as they become due. An improper use of the Bankruptcy Code justifying a finding of bad faith will then exist any time a creditor uses an involuntary bankruptcy to obtain a disproportionate advantage to that particular creditor's position, rather than to protect against other creditors obtaining such a disproportionate advantage. This is especially true where the petitioning creditor could have obtained that advantage in an alternate forum.

■■ Cantor argues that his allegedly diligent efforts to ensure satisfaction of the numerosity requirements should prohibit or at least reduce any punitive damages award. Additionally, Cantor maintains that he believed that Silverman's assets were dissipating. These arguments are utterly without merit as Silverman's credit report, dated one week after commencement of the involuntary bankruptcy but before notification of the involuntary case to the credit reporting agency, indicated that Silverman had numerous creditors and that he was paying his debts as they came due. The court is not deciding the actual number of Silverman's creditors, and whether he had 12 or more creditors for purposes of the numerosity requirement for an involuntary petition. Regardless of the actual number of creditors, however, review of Silverman's credit report by Cantor would have disclosed no basis for an argument that Silverman was generally not paying his debts

as they came due. Had Cantor truly examined Silverman's financial position diligently, the absence of a basis for an involuntary bankruptcy case would have been readily apparent.

 Finally, Cantor offers an advice of counsel argument. He alleges that his counsel stated that despite the state court's denial of summary judgment, as long as $10,000 or more was undisputed, the court would not find bad faith. (Suppl. Cert. in Opp. to Impos. of Costs, Atty's Fees and Punitive Damages ¶ 23.) He also stated that he was never informed that punitive damages could be awarded upon a finding of bad faith. (*Id.* ¶ 18.) The court finds these statements implausible in light of the fact that the plain language of the Code states that punitive damages may be paid upon a finding of bad faith as well as Cantor's admission that he received a copy of the *Landmark* decision prior to filing the petition. (*Id.* ¶ 24.) Even if Cantor relied on advice of counsel, he nonetheless filed the petition with knowledge that the superior court had just found that there were genuine issues of material fact as to his claim. The advice of counsel defense has sometimes been held as a basis for reducing an award of damages premised upon an improper use of the bankruptcy system, but it cannot reduce an award based on improper purpose and blatant disregard for the statutory requirements. 189 B.R. at 317–18. In any event, the court declines to accept that defense here. If Cantor relied with naive innocence on his attorney's advice to file an involuntary bankruptcy petition against Silverman, which this court does not believe, Cantor and his attorneys can deal with the consequences between themselves.

The court concludes that Cantor filed the petition with intent to harass Silverman and with knowledge that his claim was the subject of a bona fide dispute. He employed an improper litigation tactic, failed to conduct an adequate inquiry into Silverman's financial position and made false statements about the state court proceedings. A substantial award of punitive damages is therefore warranted. The court finds, however, that Silverman's request for $900,000 is unreasonable. Although *Landmark* awarded

$500,000 of punitive damages as a percentage of net worth, the gravity of the consequences of the involuntary petition to the alleged debtor in that case far surpassed those in the case at bar.

Attorney's fees and costs have been awarded in the amounts of $45,264.75 and $1242.90 respectively. After reviewing the totality of the circumstances and in light of the egregiousness of Cantor's behavior, his net worth of $30,000,000, and all other circumstances, punitive damages are awarded in the amount of $50,000. The attorney for Silverman is to submit an order within ten days under the five-day rule.